No. 86-041

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

IN RE THE MARRIAGE OF
MARGARET E. HURLEY,

Petitioner/Appellee,

-vs-

DENNIS P. HURLEY,

Respondent/Appellant.

_____

APPEAL FROM: District Court of the Thirteenth
Judicial District of the State of
Montana in and for the County of
Yellowstone,
The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Petitioner/Respondent:

Wright, Tolliver and Guthals;
Kenneth D. Tolliver,
Billings, Montana

For Respondent/Appellant:

Radovich Law Firm; Eric K. Hendricks
Billings, Montana

_____

Submitted on Briefs: April 4, 1986

Decided: July 17, 1986

JUL 17 1986

Filed:

_____
                Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appellant, Dennis P. Hurley, appeals from the judgment of the District Court, Thirteenth Judicial District, County of Yellowstone, dissolving the parties' marriage and apportioning the property and assets of their marital estate.

Margaret and Dennis Hurley were formerly married in 1962. In 1968, the parties adopted a child, Kevin Hurley, who was 17 years old and a senior at Billings Central Catholic High School at the time of the dissolution proceedings in the District Court. In 1970, the parties were legally divorced in the State of Minnesota. In the two years following their divorce, the parties occasionally resided together on an irregular basis, until early 1973, when Dennis asked Margaret to move to Corning, Iowa where he had secured employment the previous year. Margaret testified that she agreed to move to Iowa on the condition that they resume their marital relationship. Accordingly Margaret quit her job and sold her home in Minnesota to facilitate the move.

After moving to Iowa, Margaret resumed wearing her wedding rings and the couple held themselves out as husband and wife. In November, 1973, Dennis and Margaret purchased a home in Corning, Iowa. Margaret testified she contributed $12,500.00 toward the downpayment, that being the proceeds from the sale of her Minnesota home. Dennis produced two cancelled checks indicating that he contributed the sum of $2,500.00. The parties gave conflicting testimony regarding the total purchase price of the home, Margaret recalling the amount to be $42,500.00 and Dennis $40,500.00. The balance of the purchase price was financed by a mortgage in the sum

of $28,000.00. The parties executed the mortgage as "Dennis P. Hurley and Margaret E. Hurley, Husband and Wife."

For the years 1978-1981, Dennis prepared the family income taxes which he filed as "married-filing joint return," naming Margaret as his wife with her occupation shown as "housewife." Dennis denied that a common law marriage existed despite the fact that they held themselves out as married and despite the fact that he agreed he received "services that would be comparable or equivalent" to a wife. Based on the above evidence, the District Court concluded that the parties entered a common law marriage in April, 1973.

In 1981, the parties purchased a duplex in Eureka Springs, Arkansas, as an investment. The duplex was purchased under a contract for deed for the sum of $50,000.00, less a $20,000.00 downpayment. The record indicates the downpayment consisted of $14,000.00 in funds inherited by Dennis and $6,000.00 from the parties' joint savings account.

In 1982, Dennis obtained employment in Billings, Montana. The parties and their son resided in Billings until April, 1984, when they separated. The record discloses, as the District Court found, that the parties held themselves out as husband and wife and maintained joint checking and savings accounts while in Billings.

During 1983, Dennis was employed by I.R.I. Research in Georgetown, Guyana. While employed by I.R.I. Research, in March of 1983, Dennis completed a form designating Margaret as his beneficiary for insurance purposes, indicating her relationship as "wife."

In April 1984, Dennis disappeared from the Billings area. He later phoned Margaret from Las Vegas, Nevada, advising her that he had left a note with instructions in a post office box. The note instructed Margaret to take the funds from their joint checking and savings accounts to use to support herself and their son, and further advised that he would be living in Las Vegas.

At that time, Margaret withdrew $31,000.00 from the savings account leaving a balance of $13,994.00. She did not remove any funds from the joint checking account, in which there was a balance of $22,605.00. At this time, Margaret also had access to a savings account in her own name, with a balance of $15,000.00 which sum was the accumulation of gifts received from her family, her childhood savings, and a small inheritance from her father's estate.

Dennis returned to Billings a few days after he had phoned Margaret from Las Vegas and withdrew the sums remaining in the joint checking and savings accounts, totalling approximately $36,000.00.

In May, 1984, Dennis moved to Eureka Springs, Arkansas, and moved into one unit of the parties' duplex, where he presently resides. Dennis is a college graduate with a degree in accounting, and is presently employed for the firm of George S. May as a management consultant. The record indicates that Dennis' present earnings are approximately $1,700.00 per month. The record, however, also indicates that he has had an earning capacity of up to $4,000.00 per month.

In 1983 and 1984, Margaret attempted to establish a career in real estate in Billings, but earned only $2,300.00 in commissions. Thereafter, Margaret worked briefly as a

- 4 -

receptionist from December, 1984, through February 1985, but has been unemployed since that time. Margaret, however, testified that she intends to attend a four-month paralegal training course in Denver, Colorado, to obtain marketable employment skills if she does not obtain suitable employment soon.

The District Court found that during the period of April 1973, up to the time of separation, the parties accumulated the following assets:

Assets at time of separation

| | |
|---|---|
| Joint checking account | $ 22,605.59 |
| Joint saving account | 40,949.00 |
| Wife's separate savings account | 15,000.00 |
| 1981 Mercury Lynx | 3,500.00 |
| 1974 Chrysler | 500.00 |
| IRA | 10,000.00 |
| Furniture | 1,835.00 |
| Arkansas Duplex | 50,000.00 |

Stocks

| | |
|---|---|
| 3 shares Financial Corp. of America | 120.00 |
| 6 shares Pfazier | 120.00 |
| 162 shares Amfac | 4,050.00 |
| 3 shares N.W. National | 40.00 |
| TOTAL | $148,719.59 |

The District Court also found that the parties had accumulated the following liabilities at the time of trial:

Liabilities at time of trial

| | |
|---|---|
| Mortgage of Arkansas Duplex | $ 18,000.00 |
| Mortgage of Billings House | 40,000.00 |
| TOTAL | $ 62,000.00 |

Subsequent to the parties separation, Margaret purchased a home in Billings for $60,000.00. The "mortgage of Billings House" listed above represents the amount still owing on the $60,000 purchase price.

At the time the parties separated in April, 1984, Margaret had custody of the following assets:

- 5 -

```
Funds from joint savings account        $ 31,000.00
Personal savings account                  15,000.00
1981 Mercury Lynx                          3,500.00
Furniture                                  1,835.00

        TOTAL                           $ 51,335.00
```

Of the $31,000.00 from the parties' joint savings account, Margaret used $16,500.00 of the savings as a downpayment on the Billings house. Further, Margaret testified that she had also expended a portion of the savings for living expenses for herself and the parties' minor child, leaving a balance of $15,208.00 in savings and $1,424.66 in checking account funds.

The District Court also found that Dennis had custody of the following assets:

```
Funds from joint savings account        $ 13,994.00
Funds from joint checking account         22,605.59
1974 Chrysler                                500.00
IRA                                       10,000.00
Stocks-totaling                            4,330.00
Arkansas duplex                           50,000.00

        TOTAL                           $101,429.59
```

Accordingly, the District Court allocated the assets and liabilities in the marital estate as follows:

| Assets | Value | Wife | Husband |
|---|---|---|---|
| Wife's cash account balance | $15,208.00 | $15,208.00 | $ |
| Savings drawn by husband | 13,994.00 | | 13,994.00 |
| Checking drawn by husband | 22,605.59 | | 22,605.59 |
| 1981 Mercury Lynx | 3,500.00 | 3,500.00 | |
| 1974 Chrysler | 500.00 | | 500.00 |
| IRA | 10,000.00 | 10,000.00 | |
| Furniture | 1,835.00 | 1,835.00 | |
| Arkansas Duplex | 50,000.00 | | 50,000.00 |
| Stocks | 4,330.00 | | 4,330.00 |
| Billings house | 60,000.00 | 60,000.00 | |
| TOTAL ASSETS | $181,972.59 | $90,543.00 | $91,429.59 |
| | | | |
| **Liabilities** | | | |
| | | | |
| Billings home mortgage | $44,000.00 | $44,000.00 | $ |
| Arkansas duplex | 18,000.00 | | 18,000.00 |
| TOTAL LIABILITIES | $62,000.00 | $44,000.00 | $18,000.00 |
| | | | |
| Net Worth and Allocation | $119,972.59 | $46,543.00 | $73,429.59 |

In addition, the District Court awarded Margaret $31,439.18 to be paid in installments of $5,000.00, the first payment due 30 days after entry of the decree and the balance in five equal annual installments commencing July 1, 1986, together with interest at 10% per annum from the date of trial. In awarding Margaret the cash sum, the District Court reasoned that: "In light of the husband's superior earning capacity, the wife's need for retraining in order to obtain suitable employment and the expense she will incur in educating the parties' son, the Court finds it equitable to award her approximately 65% of the net marital estate."

The District Court also noted that Dennis failed to account accurately for the marital assets he controlled since the separation, and that he testified to purchasing assets not shown on his Rule 32 affidavit. Specifically, Dennis failed to report income of $325.00 per month he receives for rental of one-half of the duplex in Arkansas.

The record also indicates that Dennis expended a large portion of the cash assets of the marriage. Of the $36,599.59 which he took from the parties joint checking and savings accounts, he retained only $15,350.00 at the time of trial. Dennis' only explanation at trial for the dissipation of funds was the expense of transporting a woman whom he purportedly married, and her three children from Guyana, South America to the United States.

Dennis raises five issues for our review:

1. Whether the District Court erred in determining that a common law marriage had been established commencing April 1, 1973;

2. Whether the District Court's adoption of Margaret's Proposed Findings of Fact and Conclusions of Law was error;

3. Whether the District Court erred in failing to indicate the basis for the determination of the values of the marital estate when conflicitng evidence of values was presented;

4. Whether the District Court erred in selecting the time valuation of the marital estate; and

5. Whether the District Court erred, in exercise of its discretion, by acting arbitarily and without employment of conscientious judgment and by exceeding the bounds of reason in view of the circumstances.

Dennis first contends that the District Court erred in failing to explain whether its finding of a common law marriage was based on Montana or Iowa law because the parties were Iowa residents when the common law marriage was entered. Dennis further contends that the evidence does not support the conclusions that the parties entered a common law marriage under Iowa law. Margaret, however, contends that there was a valid common law marriage under the laws of both Montana and Iowa.

In Montana, in order for a common-law marriage to exist, the parties must be capable of consenting to the marriage; there must be a mutual and public assumption of the marriage relationship, cohabitation, and the marriage must take place immediately. In Re Sartain (Mont. 1984), 686 P.2d 909, 912, 41 St.Rep. 1691, 1694; In Re McClelland (1975), 168 Mont. 160, 164, 541 P.2d 780, 783. In Iowa the elements necessary to establish a common law marriage are: 1. an intent and agreement _praesenti_ to be married by both parties, 2. continuous cohabitation by the parties, and 3. a public declaration that the parties are husband and wife. In Re Marriage of Winegard (Iowa 1979), 278 N.W.2d 505, 510.

- 8 -

Clearly, the elements required to establish a common law marriage in Iowa and Montana are substantatively indentical. We, therefore, hold as to Dennis' first contention, that it was immaterial that the District Court did not state in its findings whether it found the existence of a common law marriage based on Montana or Iowa law. Because the parties were residents of Iowa, in April, 1973, however, when the alleged common law marriage was entered, we will look specifically to Iowa law to determine whether there was sufficient evidence in the record to support the District Court's conclusion that the parties entered a common law marriage.

Specifically, Dennis argues that there is a lack of evidence of an agreement to be married in _praesenti_ as required by Iowa law. In a separate opinion in In Re Marriage of Winegard (Iowa 1977), 257 N.W.2d 609, where the husband expressly denied the existence of an agreement to marry, the Supreme Court of Iowa stated:

> It is sufficent if the parties cohabitating intend present marriage, and it is immaterial how the intention is evidenced. The woman, indeed, may be entitled to marital rights if she intends present marriage, and the man does not, provided they cohabit and provided his conduct is such as to justify her in believing that he intends present marriage. 257 N.W.2d at 616.

In upholding the finding in _Winegard_ of a common law marriage, the Iowa Supreme Court permitted both direct and circumstantial proof of an agreement to be married in _praesenti_. Here, the evidence of the agreement to be married in _praesenti_ is more than adequate and Dennis' denial thereof is not controlling. Margaret testified on cross-examination as follows:

Q. You stated earlier that there was an agreement to live as man and wife. Can you explain when that agreement was made? A. The agreement to live as man and wife, I was represented and introduced as his wife as soon as we started living together. But when I agreed to move to Corning, we moved as representing, I was again introduced as his wife. We purchased our home as husband and wife.

Q. Can you point to an exact moment where this agreement was made? At some point, there was a decision to become man and wife. Can you tell me what that moment was? A. At the moment when I agreed to move to Corning.

There being an abundance of evidence in the record establishing the other elements of an Iowa common law marriage, we hold the District Court did not err in finding the parties entered a common law marriage in April, 1973.

Dennis next contends that the District Court's adoption of Margaret's Proposed Findings of Fact and Conclusions of Law was error. It is well settled that the District Court should not rely too heavily on findings and conclusions submitted by the winning party, and reliance is too heavy when the findings are used to the exclusion of a consideration of the facts and the exercise of the Judge's own judgment. In Re Marriage of Hunter (1982), 196 Mont. 235, 245-46, 639 P.2d 489, 495. Our ultimate test for adequacy of findings of fact is whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and whether they are supported by the evidence presented. In Re Marriage of Wolfe (1983), 202 Mont. 454, 457-58, 659 P.2d 259, 261; In Re Marriage of Jensen (Mont. 1981), 631 P.2d 700, 703, 38 St.Rep. 1109, 1113. The findings in this case, which were adopted almost verbatim from Margaret's proposed findings, do meet the above tests. The District Court's findings of fact and conclusions of law are comprehensive and pertinent to the issues presented.

Further, they are all supported by sufficient evidence in the record.

Dennis' third contention is that the District Court erred by failing to indicate the basis for the determination of the values of the marital estate when conflicting evidence of values was presented. Specifically, Dennis contends that the District Court erred in valuing the parties' personal property. At trial, Margaret testified that the parties' personal property should be valued at $1,835.00. Margaret arrived at this amount by attaching a value to each item of personal property an amount equal to one-fourth of its purchase price. Dennis, however, testified that the proper valuation method should be the replacement cost of each item.

In Montana, in distributing marital property pursuant to a dissolution and adopting proposed values or setting its own values, the District Court is free in its discretion to adopt the recommendation of a party or a layman. In Re Marriage of Garst (Mont. 1983), 669 P.2d 1063, 1066-67, 40 St.Rep. 1526, 1529; In Re Marriage of Goodmundson (1982), 201 Mont. 535, 539, 655 P.2d 509, 511. But it is also true that when faced with widely conflicting valuations, the District Court is required to give reasons for selecting one value over the others. Wolfe, 202 Mont. at 459, 659 P.2d at 262. Clearly, the District Court should have stated its reasons for adopting Margaret's valuation over Dennis'. We, however, hold that the error was harmless, the method employed by the District Court being more sound than the method suggested by Dennis.

Dennis next contends that the District Court erred in selecting the time valuation of the marital estate. In the instant case, the District Court valued Dennis' estate as of

- 11 -

the date of separation and Margaret's estate as of the date of dissolution. Dennis maintains that the same valuation date should be applied to both parties and that it should be the date of separation. Margaret, however, contends that the valuation dates adopted allowed for an equitable analysis and allocation of the parties assets.

The standard for reviewing the property division in a dissolution decree is well settled in Montana. The apportionment made by the District Court will not be disturbed on review unless there has been a clear abuse of discretion as manifested by a substantially inequitable division of the marital assets resulting in substantial injustice. In Re Marriage of Holston (Mont. 1983), 668 P.2d 1048, 1050, 40 St.Rep. 1435, 1436-37; In Re Marriage of Schultz (1982), 199 Mont. 332, 338, 649 P.2d 1268, 1271; In Re Marriage of Brown (1978), 179 Mont. 417, 422, 587 P.2d 361, 364. Abuse of discretion is further indicated by a District Court's arbitrary action without employment of conscientious judgment or in excess of the bounds of reason resulting in substantial injustice. In Re Marriage of Martens (Mont. 1981), 637 P.2d 523, 525, 38 St.Rep. 2135, 2137; In Re Marriage of Creon (1981), 195 Mont. 254, 275, 635 P.2d 1308, 1309.

It is well settled that a proper disposition of marital property in a dissolution proceeding requires a finding of the net worth of the parties. In Re Marrige of Hamilton (1980), 186 Mont. 282, 285, 607 P.2d 102, 103; In Re Marriage of Vivian (1978), 178 Mont. 341, 344, 583 P.2d 1072, 1074; In Re Marriage of Kramer (1979), 177 Mont. 61, 67, 580 P.2d 439, 443. This Court has further recognized that selection of a single valuation date for determining the net worth of the

parties can create an inequitable disposition. In Re Marriage of Wagner (Mont. 1984), 679 P.2d 753, 757, 41 St.Rep. 409, 414.

In the instant case the parties effected a partial and informal division of a portion of the marital estate at or about the time of separation. Specifically, they each took a substantial portion of cash and placed it in their separate accounts. Margaret applied her cash toward maintaining herself and the parties' minor son for whom Dennis provided no support or financial assistance during the separation. With regard to Dennis, however, it is sufficient to say that the record is clear that he dissipated his cash in ways which did not further the legitimate objectives of the marriage.

The District Court relied on Dennis' dissipation of funds in reaching its conclusion that to equitably apportion the parties' marital estate separate valuation dates were necessary. Section 40-4-202(1), MCA, permits the District Court to consider "dissipation of value of the respective estates" by one or both of the parties in its apportionment of the marital estate. Here, the District Court considered Dennis' dissipation of assets in its determination of the parties net worth. It made no substantive difference whether the District Court considered Dennis' dissipation of funds in its determination of the net worth of the parties or in its actual apportionment of the marital estate because a finding of net worth is simply the first step in the apportionment process. We, therefore, hold that the District Court did not abuse its discretion by selecting separate valuation dates for the estates of the respective parties.

With regard to the apportionment of assets to the respective parties, Dennis contends it was error for the

- 13 -

District Court to award Margaret additional assets to cover the expenses she intends to incur in sending the parties' son to college. In this regard, the District Court made the following findings of fact:

> 37. The evidence further shows that the parties' son is a senior in high school and an honor student at Billings Central Catholic High School, and Boys State delegate and that he desires a college education. His last year at Central will cost $1,048.00 in tuition.
>
> 39.. . . In light of the husband's superior earning capacity, the wife's need for retraining in order to obtain suitable employment and the expense she will incur in educating the parties' son, the Court finds it equitable to award her approximately 65% of the net marital estate.. . . (Emphasis added.)

Section 40-4-202(2), MCA states:

> In a proceeding, the court may protect and promote the best interests of the children by setting aside a portion of the jointly and separately held estates of the parties in a separate fund or trust for the support, maintenance, education, and general welfare of any minor, dependent, or incompetent children of the parties. (Emphasis added.)

Thus, in the instant case, the District Court erred in two respects. First, it was error to award a portion of the marital estate directly to Margaret for the education of the parties' son. Such an apportionment should have been placed in a "separate fund or trust" as provided by § 40-4-202(2), MCA.

Second, § 40-4-202(2), MCA, permits the District Court to set aside a portion of the marital estate only for the education of a "minor" child. Here, the District Court apparently awarded Margaret a greater portion of the marital estate using as one of the factors in its decision the college education of the parties' son. In Montana, a parents obligation for support ends at the age of majority, unless there has been some voluntary agreement that support by one

- 14 -

or both parents will continue beyond majority. In Re Marriage of Bordner (Mont. 1986), 715 P.2d 436, 438, 43 St.Rep. 417, 419-20; In Re Marriage of Herrig (1982), 199 Mont. 174, 187, 648 P.2d 758, 765. The District Court's consideration of Margaret's educational expenses effectively placed an improper obligation on Dennis to support their son beyond majority. This cannot be done. Thus, we remand this case for the District Court to apportion the parties' assets without regard to the expenses Margaret will incur in sending the parties' son to college. The District Court, however, may consider Margaret's expenses in raising and educating the parties' son from the time of separation until he reached majority as a significant contribution to the marital estate. In Re Marriage of Popp (Mont. 1983), 671 P.2d 24, 28, 40 St.Rep. 1747, 1751. The District Court may, of course, grant Margaret a larger share of the marital property upon the need for her retraining and his superior earning capacity.

Dennis' final contention is that the District Court erred in awarding Margaret the parties' Individual Retirement Account for failure to consider the tax consequences. Dennis, however, failed to present this issue to the District Court and advances it here with no citation of authority to establish an immediate tax liability. In Re Marriage of Beck (Mont. 1981), 631 P.2d 282, 285, 38 St.Rep. 1054, 1058. We, therefore, will not discuss the issue further.

We remand to the District Court for further proceedings consistent with this opinion.

John G. Shelby
Justice

- 15 -

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

- 16 -