JUSTICE NELSON,
specially concurring.
I concur in the result reached by the Court in this case not only for the reasons set forth in our opinion, but also for an additional reason not discussed.
We have time and time again paid lip service to the oft-stated but usually ignored rule that, while not error per se, district courts should not adopt verbatim the findings of fact and conclusions of law of the prevailing party. In re Marriage of Nikolaisen (1993), 257 Mont. 1, 5, 847 P.2d 287, 289 (citing In re Marriage of Hurley (1986), 222 Mont. 287, 295-96, 721 P.2d 1279, 1285). The reason underlying the rule is that “[e]rror occurs when the court accepts one party’s proposed findings of fact without proper consideration of the facts and where there is a lack of independent judgment by the court.” In re Marriage of Kukes (1993), 258 Mont. 324, 328, 852 P.2d 655, 657 (citing In re Marriage of Callahan (1988), 233 Mont. 465, 472, 762 P.2d 205, 209).
This case presents a perfect illustration of what happens when the rule is observed in the breach. Here, the District Court adopted by reference a fourteen page portion of the proposed findings of fact submitted by counsel for Mark and simply photocopied and attached those as Exhibit Ato the court’s Findings of Fact, Conclusions of Law, and Decree of Divorce. Included in Exhibit A appears the following:
The court further finds that Margaret Davies should be awarded maintenance for a specified period of time to encourage and impress upon her that it is necessary for her to get on with her life and to stop looking to her husband and the court for unrealistic expectations.
In making the division of property, the court has considered the matters stated in § 40-4-202, MCA [sic] in making the determination of maintenance the court has considered the matters stated in § 40-4-203, MCA. The court finds that Margaret Davis is a *481 pleasant appearing attractive person who has the ability both physically and emotionally to acquire continuing commercial education and training to enable her to find appropriate employment, in addition to the education and training that she has already received. [Emphasis added.]
It is bad enough when attorneys inject gender bias and sexual stereotyping into legal proceedings; it is unacceptable when the court wholly or partially premises its decision on such erroneous preconceptions. While that was, perhaps, not the court’s intention in the instant case, nevertheless, in adopting verbatim, by reference, Mark’s counsel’s view that the wife’s physical appearance should play some part in resolving property distribution and maintenance issues, the court has made that insupportable proposition its own.
Like other courts and organized bars, this Court and the Montana State Bar have recognized the harm caused by gender bias and sexual stereotyping in court proceedings. To that end, this Court has appointed a Gender Bias Task Force which is charged with the duty of examining “the extent to which gender bias ... affects participants in the judicial system, such as ... litigants ... and members of the public who come into contact with the courts of Montana.” In the Matter of the State Bar of Montana’s Gender Fairness Steering Committee, No. 90-231 (1990) (Petition and Order).
While that task force has not completed its report, it is safe to say that if attorneys and members of the judiciary entertain preconceptions about a party because of the party’s gender, and worse, then act upon those stereotypes, the entire legal process is invariably tainted and debased.
Article II, Section 4 of our Montana Constitution recognizes and guarantees the individual dignity of each human being without regard to gender. Every attorney and every judge in Montana is sworn to uphold that constitutional right. Attorneys: § 37-61-207, MCA; Judges: Art. Ill, Sec. 3, Mont. Const., and § 2-16-211, MCA. There is simply no justification for injecting gender bias and sexual stereotyping into any legal proceeding in this state. It is morally wrong; it violates the constitution; it will not be tolerated.
While Mark’s counsel argues that his — and by adoption, the court’s — comments were “complimentary and encouraging,” I suggest that few women would agree. I suspect that most women would find such statements demeaning and patronizing. I wonder what the reaction would have been if the court had concluded that Mark should get substantially less property because he is a good looking guy and, *482 by implication, will likely find a new wife; that he should stop whining; and that he should get on with his life.
In its Petition to the Supreme Court, the State Bar of Montana’s Gender Fairness Steering Committee listed four forms of gender bias: a) denying rights on the basis of gender; b) subjecting people to stereotypes about the proper behavior of men and women which ignore their individual situations; c) treating people differently on the basis of gender in situations in which gender should be irrelevant; and d) subjecting men and women as a group to a legal rule, policy, or practice which produces worse results for them than for the other group. All four forms of gender bias; are implicated in any decision in which the counsel and the court litigate and decide issues wholly or partially on the basis of the physical appearance and attractiveness of one of the litigants.
The various sections of the Montana Uniform Marriage and Divorce Act and our substantial body of case law set forth in detail the legal requirements under which matters of property distribution, maintenance, custody, support and-visitation are to be litigated and decided in dissolution actions in this state. Gender bias and sexual stereotyping have absolutely no part in the process; they are not part of the equation. The court has no obligation to, and, indeed, may not favor the female litigant in order to protect “the little woman;” nor is it proper for the court to disadvantage the female party by wholly or partially deciding contested dissolution issues on the basis that she is physically attractive and, by implication, will likely remarry soon. Moreover, it is patently improper that counsel suggest that the court should do so.
Simply put, gender bias and sexual stereotyping have no place in the jurisprudence or in the courtrooms of this state. The fact that such misconceptions were improperly injected into this case lends further support to our decision here. Accordingly, I concur.
JUSTICE GRAY joins in the foregoing special concurrence of JUSTICE NELSON.