No. 96-018

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN RE MARRIAGE OF:

CAROL M. BISHOP

      Petitioner and Appellant,

  and

ROBERT W. BISHOP,

      Respondent and Respondent.

FILED

JUL 22 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Fred E. Work, Jr., Work Law Firm, Billings, Montana

    For Respondent:

    Mark D. Parker, Parker Law Firm, Billings, Montana

Submitted on Briefs:  May 2, 1996

Decided:  July 22, 1996

Filed:

_____
         Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of this Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Appellant, Carol M. Bishop, appeals from the Findings of Facts and Conclusions of Law entered by the Thirteenth Judicial District Court of Yellowstone County on August 25, 1995.

We affirm in part and reverse and remand in part.

Appellant raises the following issues, which we restate as follows:

1. Did the District Court abuse its discretion in excluding Robert Bishop's tools as part of the marital estate asset list?

2. Did the District Court abuse its discretion in valuing Carol Bishop's furniture at $20,000?

3. Did the District Court abuse its discretion in valuing automobiles at $7,200?

4. Did the District Court abuse its discretion in valuing the tractor at $8,000?

5. Did the District Court abuse its discretion in finding that the $37,500 promissory note to Robert Bishop's mother was a valid marital debt?

6. Did the District Court abuse its discretion in the division of the marital assets?

7. Did the District Court abuse its discretion in denying Carol Bishop maintenance?

**FACTS**

Robert and Carol married in May 1975. There are four children of the marriage; two daughters from Carol's previous marriage

2

adopted by Robert, both of whom have obtained the age of majority, and two sons, ages 17 and 15 at the time of trial. Carol was a homemaker during the course of the marriage, and Robert is a self-employed mechanic, who also teaches at the Billings College of Technology. As part of his employment, Robert has a large collection of automotive repair tools.

On December 5, 1994, the Thirteenth Judicial District Court issued a temporary restraining order at Carol's request. This order was subsequently dissolved, after which Carol left the family home. The two minor children remained with Robert. Upon her departure, Carol removed all of the household goods as well as her personal property. Robert obtained a loan in order to replace the household items at a cost of $20,000.·

A petition for dissolution was filed, and a hearing was held in June 1995. At trial, testimony was heard from the parties, Ms. Donna Bender, and Mr. Dennis Whitmore. Ms. Bender is an appraiser hired by Carol and works locally as an auctioneer. Mr. Whitmore, is a friend of Robert's and his former business partner in Precision Power Trains. Mr. Whitmore bought Robert out of his interest in that business. Both Robert and Mr. Whitmore offered appraisal values for several marital assets.

The District Court entered its findings of facts and conclusion of law in August 1995. Carol appeals.

## STANDARD OF REVIEW

When a district court's findings of fact regarding marital property distribution are not clearly erroneous, and when

3

substantial credible evidence supports the findings and judgment, this Court will not alter the distribution of the martial property absent an abuse of discretion. In re Marriage of Binsfield (1995), 269 Mont. 336, 888 P.2d 889.

This Court recognizes that a district court has broad discretion in determining value of property in marriage dissolution. In re Marriage of Robinson (1994), 269 Mont. 293, 296, 888 P.2d 895, 897; In re Marriage of Rada (1994), 263 Mont. 402, 405, 869 P.2d 254, 255.

## ISSUE ONE

Did the District Court abuse its discretion in excluding Robert Bishop's tools as part of the marital estate asset list?

On appeal, Carol argues that the District Court abused its discretion when it failed to list several items as assets of the parties in the court's findings. In finding of fact no. 10, the court noted that the parties disputed the value of Robert's tools. Based on the testimony of Robert and Mr. Whitmore, the court then valued Robert's lathe at $3,500, his mill at $2,500, his hand tools at $5,000, and other miscellaneous tools at $4,500, for a total of $15,500. Carol argues that although these items were valued and awarded to Robert in the court's findings, they were not listed as assets in the marital estate.

Before a district court divides the marital estate it must first determine the net worth of the marital assets. Robinson, 888 P.2d at 897. In this case, the court identified several of Robert's tools as assets of the marriage. The court then assigned value to these tools. Despite the court's identification and

4

subsequent valuation, it then failed to consider this amount when it distributed the assets. *See* In re Marriage of Smith (1994), 264 Mont. 306, 310, 871 P.2d 884, 886. No where in either Carol's or Robert's assets lists are the tools mentioned. This oversight is clearly in error.

We conclude that the District Court erred in the division of the marital estate for its failure to include the value of Robert's tools. We reverse on this issue and remand this case for a re-evaluation of the marital estate. Upon remand, the court should properly consider the provisions set forth in § 40-4-202, MCA.

## ISSUE TWO

Did the District Court abuse its discretion in valuing Carol Bishop's furniture at $20,000?

After the court dissolved the restraining order against Robert, Carol left the family home and removed all of the furniture and her personal property. Following Carol's departure, Robert replaced the furniture and other property at a cost of $20,000.

On appeal, Carol argues that the household goods removed are actually worth $2,844, not the $20,000 replacement value placed on these items by the court. She argues the household goods she removed were over fifteen years old and had little value. She further asserts that in the sense that Robert had his shop with his tools, that she, as a homemaker, had her household items.

In this case, Carol chose to leave the family home and take all of the household items with her. Given that Carol chose to remove all of the items from the home upon departure, this left Robert in a position of having to replace everything. As long as

5

the valuation of the property in a dissolution is reasonable in light of the evidence submitted, we will not disturb the finding on appeal. Robinson, 888 P.2d at 897 (citing In re Marriage of Milesnick (1988), 235 Mont. 88, 94-95, 765 P.2d 751, 755).

It was within the discretion of the District Court to accept replacement costs as a reasonable valuation of household goods. We affirm on this issue.

## ISSUE THREE

Did the District Court abuse its discretion in valuing automobiles at $7,200?

At trial, Carol's appraiser, Ms. Bender, estimated the value of Robert's various automobiles at $26,800. On appeal, Carol contends that Ms. Bender's valuations were based on the widely accepted "Kelly Blue Book" values.

Robert submitted evidence rebutting the valuations presented by Ms. Bender. Robert explained that several of the cars valued by Ms. Bender actually belonged to the minor children of the marriage. Robert further testified that several cars sat in total disrepair and, in fact, held a negative value.

The suggested retail prices in the blue book are simply suggestions. Again, the court has wide discretion in determining the value of marital assets of the marriage. Rada, 869 P.2d at 255. A district court has far reaching discretionary powers to determine the value of property in a dissolution action. Its valuation can be premised on expert testimony, lay testimony, documentary evidence, or any combination thereof. Milesnick, 765 P.2d at 755. The District Court did not abuse its discretion by accepting

6

Robert's testimony and corresponding valuations. We affirm on this issue.

## ISSUE FOUR

Did the District Court abuse its discretion in valuing the tractor at $8,000?

Carol disputes the court's valuation of a tractor at $8,000. Carol asserts that the tractor is worth $15,690. Carol's appraiser arrived at this figure by taking 70% of the new cost, plus an additional $150 for the tractor blade. In response to Carol's valuation, Robert stated that he had conferred with personnel knowledgeable in tractor sales, after which he concluded that the tractor was only worth $8,000.

Again, the court is in a position to accept Robert's valuation of the tractor. Rada, 869 P.2d at 255. "Because the District Court has had the opportunity to observe the demeanor of the witnesses, we defer to its resolution of any conflicting evidence." In re Marriage of Porter (1991), 247 Mont. 395, 398, 807 P.2d 192, 194. The court did not abuse its discretion by accepting the $8,000 valuation. We affirm on this issue.

## ISSUE FIVE

Did the District Court abuse its discretion in finding that the $37,500 promissory note to Robert Bishop's mother was a valid marital debt?

The court found that Robert's mother, Audrey Bishop, lent Robert $37,500 to build the shop and do renovations on the family home. This amount was subsequently charged to Robert as a valid debt in the division of the marital estate.

7

On appeal, Carol argues that the loans are suspicious. She contends that the $37,500 represents several loans that occurred over the course of 20 years, and that subsequent to the loans, Robert has received a $10,000 gift from his mother and this amount was not applied to the debt. Furthermore, Carol alleges that she does not know if the loan money was even used to enhance the value of the couple's marital assets.

At trial, however, Carol testified that the couple did not discuss marital finances. Thus, the fact that Carol does not know how Robert may have spent the money lent by Ms. Bishop is not compelling. In addition, evidence that Robert may have received subsequent gifts from his mother neither indicates nor confirms the invalidity of the previous loans from his mother.

Carol also argues that the debt is not valid because the promissory note reflecting the $37,500 debt was signed in 1987, and therefore Robert could raise a statute of limitations defense against his mother. This argument was not raised at trial, subsequently this Court will not consider the issue for the first time on appeal. In re Marriage of Craib (1994), 266 Mont. 483, 496, 880 P.2d 1379, 1387; Binsfield, 888 P.2d at 893.

The record contains a copy of the promissory note Robert signed over to his mother for $37,500, the note substantiates the court's conclusion that the debt to Robert's mother is valid. See In re Marriage of Neal (1994), 267 Mont. 455, 884 P.2d 789. It was within the court's discretion to determine the note was legitimate as the "assessor of the credibility of witnesses." In re Marriage

8

of Ruff (1991), 247 Mont..486, 490, 807 P.2d 1345, 1348. The District Court did not abuse its discretion in determining that the debt to Ms. Bishop was valid, and, therefore, chargeable to the marital estate. We affirm on this issue.

## ISSUE SIX

Did the District Court abuse its discretion in the division of the marital assets?

Carol argues that the District Court improperly considered higher education expenses of the minor children in the division of the marital estate. Carol asserts that under Montana case law, this finding represents an improper obligation and, accordingly, is a clear abuse of discretion. In re Marriage of Hurley (1986), 222 Mont. 287, 721 P.2d 1279.

In Hurley, this Court concluded that the district court erred when it awarded the wife a greater portion of the marital estate using as one of the factors in its decision the college education of the parties' son. Hurley, 721 P.2d at 1286. This Court held that a parent's obligation for support ends at the age of majority, unless there has been some sort of voluntary agreement to provide for further education beyond that age. Hurley, 721 P.2d at 1287; See also In re Marriage of Hewitt (1990), 242 Mont. 389, 791 P.2d 444 (distinguishes court ordered child support payments).

In the instant case, the court did not order child support. Instead, the court stated "this award is disproportionately distributed in Robert's favor." The court then stated that it was considering the fact that Robert would be the principal care-giver for the minor children and that this carried a responsibility for

higher education past high school. As was the case in <u>Hurley</u>, the District Court inappropriately determined that the custodial parent should receive a disproportionate share of the marital estate in consideration of the children's college expenses. In choosing to award Carol less on this basis, the court effectively placed an improper obligation on Carol to support the children beyond the age of majority. <u>Hurley</u>, 721 P.2d at 1287.

We remand on this issue for the District Court to apportion the parties' marital assets without regard to higher education expenses.

**ISSUE SEVEN**

Did the District Court abuse its discretion in denying Carol Bishop maintenance?

Finally, Carol argues that the court should have awarded her maintenance. The standard of review for maintenance awards is whether the district court's findings are clearly erroneous. In re Marriage of Smith (1995), 270 Mont. 263, 269, 891 P.2d 522, 526; In re Marriage of Corey (1994), 266 Mont. 304, 308, 880 P.2d 824, 827. Throughout the marriage, Carol was a homemaker. She contends that she has no marketable skills. Furthermore, she argues that Robert has the capacity to both earn an income and manage the conditions of a maintenance award.

Following the dissolution of a marriage, maintenance is awarded when the spouse seeking the award both lacks sufficient property to provide for his or her reasonable needs and is unable to support himself or herself through appropriate employment. Section 40-4-203 (1), MCA. Here, the court awarded Carol a

10

contract receivable from Précision Power Trains. Subsequently, the court denied an award of maintenance and found Carol had been awarded sufficient property to meet her needs.

We agree. The findings indicate that the court considered the statutory factors listed in § 40-4-203, MCA. Corey, 880 P.2d at 827. The Precision Power Trains contract was worth over $90,000 and will provide Carol with a steady stream of income. We conclude that the court's decision not to award Carol maintenance was not clearly erroneous.

Affirmed in part and reversed in part and remanded for further proceedings in accordance with this opinion.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

11

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Fred E. Work, Jr.
Work Law Firm
3311 Fourth Ave. No.
Billings, MT 59101-1206

Mark D. Parker
Parker Law Firm
P.O. Box 7212
Billings, MT 59103-7212

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _A. Gallagher_
Deputy