No. 03-035

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 29

IN RE THE MARRIAGE OF

LORI RUST HABERKERN,

       Petitioner and Appellant,

  and

RICHARD G. HABERKERN,

       Respondent and Respondent.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and for the County of Flathead, Cause No. DR-00-595 (A),
The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          George B. Best, Attorney at Law, Kalispell, Montana

      For Respondent:

          Bruce McEvoy, Johnson, Berg, McEvoy & Bostock, PLLP, Kalispell, Montana

                  Submitted on Briefs:  June 5, 2003

                       Decided:   February 17, 2004

Filed:

_____
                  Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1     Lori Rust Haberkern (Lori) appeals from the Decree of Dissolution entered on November 8, 2002, by the Eleventh Judicial District Court, Flathead County. We affirm in part, reverse in part and remand for further proceedings consistent with this Opinion.

BACKGROUND

¶2     Lori and Respondent, Richard Haberkern (Richard), were married in Winston-Salem, North Carolina, on September 15, 1984. They have one son born September 10, 1987. The parties have lived separately since August 2000, and Lori filed a Petition for Legal Separation on November 20, 2000.

¶3     At the time they were married, both parties worked for R.J. Reynolds. Lori earned a salary of approximately $26,000 per year when she stopped working there in 1986 to become a homemaker and act as the general contractor on their new home. She worked a variety of short-term jobs in water exercise and consultant/contract work and the income derived from such projects paid for a $20,000 swimming pool, landscaping, a heater, water stove and dome to cover the pool at their house built on their farmland in North Carolina.

¶4     R.J. Reynolds employed Richard as an engineer from the time the parties were married until 1997. He had purchased farmland acreage eight years prior to the marriage, and after they were married, the parties placed some of their property into joint ownership for a homesite. While working for R.J. Reynolds, Richard earned approximately $100,000 on average annually in addition to his pension plan, 401K, bonuses and health insurance. His salary contributed to the 401K, savings, investments, the mortgage, vacations, decorations, landscaping, gifts, donations and living expenses. When he accepted an early

2

retirement offer from R.J. Reynolds effective September 1, 1997, he rolled his 401K into Smith Barney Accounts.

¶5 In 1985, the parties decided to construct a residence on the farmland acreage that Richard owned prior to marriage. It was financed in large part by loans from the Reynolds Caroline Federal Credit Union secured by Richard's inheritance of stock from his grandfather. Both parties contributed physical labor towards completion of the residence. The house caught fire on April 25, 1997, and it was a total loss, including all the contents within.

¶6 Eventually, the Haberkerns negotiated a $1,080,338 settlement with their insurer to settle all claims concerning the residence fire. The settlement covered all improvements on the property, including but not limited to the swimming pool and landscaping, constructed with marital funds. Richard applied the settlement funds towards the balance of their mortgage on the residence and living expenses during the negotiation period. He deposited the balance, $860,000, into joint Smith Barney Accounts to pay for living expenses and to purchase two residences and commercial property in Montana. In 1998, the family relocated to the Flathead Valley in Montana to enter into semi-retirement.

¶7 Both parties are active in community service efforts. They are both employable in a variety of capacities, however, it is unlikely that Richard could obtain comparable employment to his prior highly specialized employment with R.J. Reynolds. Both parties may be able to generate income from the assets allocated to them through the divorce decree.

¶8 This matter was before the District Court of the Eleventh Judicial District for a

3

dissolution hearing on April 9 and 12, 2002. The District Court issued Findings of Fact, Conclusions of Law and Decree of Dissolution on November 8, 2002. In its Findings of Fact, Conclusions of Law and Decree of Dissolution, the District Court valued the marital estate at $782,503, allocating $509,158 to Lori and $273,345 to Richard. The court excluded portions of retirement accounts and almost the entirety of Richard's North Carolina farmland from the marital estate. The District Court also applied a twenty-two percent reduction to seven Smith Barney Accounts to accommodate tax consequences when liquidated. Additionally, the court directed one of the seven reduced Smith Barney Accounts to be set up as a trust for the parties' son's present educational expenses through his post secondary education until he reaches the age of twenty-five. Lori appeals from the Decree of Dissolution. We restate and consider the following issues on appeal:

¶9    1. Whether the District Court erred when it determined the value and division of the marital estate.

¶10    2. Whether the District Court erred when it failed to compute the child support obligation of Richard to Lori for their minor son.

STANDARD OF REVIEW

¶11    Section 40-4-202, MCA, governs the distribution of the marital estate vesting a district court with broad discretion to apportion the marital estate in a manner which is equitable to each party under the circumstances. *In re Marriage of Bee*, 2002 MT 49, ¶ 34, 309 Mont. 34, ¶ 34, 43 P.3d 903, ¶ 34. We initially review a district court's division of marital property to determine whether the findings of fact upon which the division is based are clearly erroneous. *In re Marriage of Gerhart*, 2003 MT 292, ¶ 15, 318 Mont. 94, ¶ 15, 78 P.3d

4

1219, ¶ 15. "A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake." *In re Marriage of Steinbeisser,* 2002 MT 309, ¶ 17, 313 Mont. 74, ¶ 17, 60 P.3d 441, ¶ 17. Absent clearly erroneous findings, this Court will affirm a district court's division of property unless we identify an abuse of discretion. *Gerhart*, ¶ 16.

DISCUSSION

ISSUE ONE

¶12    Whether the District Court erred when it determined the value and division of the marital estate.

¶13    A district court has discretion to adopt any reasonable valuation of property supported by the record. *Bee*, ¶ 34. This Court does not substitute its judgment for that of the trial court on such matters. *In re Marriage of Oehlke*, 2002 MT 79, ¶ 21, 309 Mont. 254, ¶ 21, 46 P.3d 49, ¶ 21.

¶14    Lori maintains three arguments challenging the District Court's determination of the value of the marital estate. First, she contends that the District Court erroneously reduced the value of the Smith Barney Accounts by twenty-two percent to compensate for estimated tax consequences when sold. She states that the record is void of any such suggestion that these accounts would be sold, therefore it was incorrect to reduce the value of the marital estate to cover a speculative tax consequence. Second, Lori alleges that the District Court abused its discretion in violation of § 40-4-202(2), MCA, when it set aside a significant portion of the marital estate to assist in payment for the parties' minor child's potential

5

preparatory school expenses and post secondary education expenses. Finally, she claims that the District Court failed to consider her non-monetary contribution to the North Carolina farmland when excluding virtually all of its value from the marital estate.

¶15 Richard rebuts Lori's claim that he never planned to sell the Smith Barney Accounts directing our attention to the transcript where he stated that he may be forced to sell them at some point in the near future. To support his claim that the twenty-two percent reduction was appropriate, Richard illustrated that he is unemployed and it is inevitable that he will have to access these accounts, and the District Court gave weight to testimony presented by both parties to determine such reduction. Next, Richard cites to § 40-4-202(2), MCA, pointing out that the statute specifically allows for setting aside a portion of the marital estate for the "education" of a "minor" dependent. Third, Richard suggests that Lori is being compensated for her contribution to the North Carolina farmland through the assets she is being awarded as set forth in the Decree. Both of their contributions to the improvements to the farmland were converted into cash via the fire settlement, and then converted into the replacement property purchased in Montana. The farmland is now what it was prior to the commencement of constructing the house.

¶16 We consider each argument in turn. First, when determining the marital property distribution, the District Court valued the seven Smith Barney Accounts and determined that the marital estate value of these accounts should be decreased by twenty-two percent to accommodate reasonable state and federal tax rates for ordinary income at the time of withdrawal. Relying upon *In re Marriage of Debuff*, 2002 MT 159, 310 Mont. 382, 50 P.3d 1070, Lori asserts that the District Court abused its discretion in the valuations, because

consideration of tax consequences should only be contemplated when there is a "concrete and immediate tax liability." *See Debuff*, ¶ 47. We agree.

¶17    This Court has held that there is an abuse of discretion when a district court fails to consider a concrete and immediate tax liability when its property distribution order precipitates such tax liability. *In re Marriage of Lee* (1991), 249 Mont. 516, 519-20, 816 P.2d 1076, 1078. Conversely, we have also held numerous times that a district court did not abuse its discretion when it did not consider tax liabilities, because such liabilities were not imminent taxable events. Such consideration would cause the court to speculate as to the value of the specific marital asset. *See, e.g., Debuff*, ¶¶ 48-50; *In re Marriage of Taylor* (1993), 257 Mont. 122, 127, 848 P.2d 478, 481; *In re Marriage of Swanson* (1986), 220 Mont. 490, 496, 716 P.2d 219, 223; *Gilbert v. Gilbert* (1981), 192 Mont. 444, 447, 628 P.2d 1088, 1089. However, we have not considered whether a district court abuses its discretion when it entertains a tax liability in valuing a marital asset where the distribution order does not specifically force a sale of the asset to satisfy the distribution nor is there an imminent sale of such asset, as is the situation at hand.

¶18    While we do accord great discretion to a district court to determine the valuation of the marital estate, this Court is not convinced that the evidence before the District Court warranted the twenty-two percent decrease in the value for these seven Smith Barney Accounts. While Richard testified that he will eventually have to cash out these retirement accounts as required by law, he had no intention of selling them immediately. Furthermore, Richard was fifty-six years old at the time of the hearing and could not liquidate them without penalty until he was fifty nine and one half years old.

7

¶19 To apply a deduction of a "reasonable" tax rate to retirement accounts that *may* be liquidated at *some time in the future* frustrates the goal of achieving a fair and equitable disposition of the marital estate. We conclude that it is unreasonable to consider tax consequences in light of numerous unknown factors such as the value of the account at the time it is eventually liquidated; the tax laws in effect at the time it is eventually liquidated; and when the account will eventually be sold. Otherwise, such valuations are merely conjectural. Therefore, we conclude that the District Court abused its discretion when it deducted twenty-two percent from the value of the seven Smith Barney Accounts.

¶20 Next, we consider whether the District Court erred when it allocated one of the seven reduced Smith Barney Accounts to set up a trust fund dedicated to educational expenses for Lori and Richard's minor child. Section 40-4-202(2), MCA, provides in pertinent part:

> In a proceeding, the court may protect and promote the best interests of the children by setting aside a portion of the jointly and separately held estates of the parties in a separate fund or trust for the support, maintenance, *education*, and general welfare of any *minor*, dependent, or incompetent children of the parties.

(Emphasis added). We have said that § 40-4-202(2), MCA, permits a district court to set aside a portion of the marital estate only for education of a "minor" child. *Hurley v. Hurley* (1986), 222 Mont. 287, 298, 721 P.2d 1279, 1286. In Montana, parental obligation to support minor children ends when a child reaches the age of majority, unless the child is dependent, incompetent, or there has been some voluntary agreement by one or both parents to extend such support beyond the majority. *Hurley*, 222 Mont. at 298-99, 721 P.2d at 1286-87. The age of majority in Montana is eighteen years of age. *Chrestenson v. Chrestenson* (1979), 180 Mont. 96, 99, 589 P.2d 148, 150. Thus, a district court may not create a trust

8

to support an independent, competent child after a parent's support obligation has expired absent a voluntary agreement. *See In re Marriage of Simms* (1994), 264 Mont. 317, 329, 871 P.2d 899, 906; *In re Marriage of Roullier* (1987), 229 Mont. 348, 357, 746 P.2d 1081, 1086-87.

¶21 In *Roullier*, we concluded that the district court had not abused its discretion when it found that there was adequate testimony to substantiate a voluntary agreement of parents to support their child beyond the age of majority, specifically addressing college expenses. *Roullier*, 229 Mont. at 357, 746 P.2d at 1086-87. Roullier testified that if he was financially capable, he would pay for books, tuition, living expenses, and fees associated with attending a four year college so long as the curriculum was acceptable to both him and his former wife. *See Roullier*, 229 Mont. at 357-58, 746 P.2d at 1086-87. This Court determined that the cited testimony demonstrated a desire to assist in paying for such expenses, and as such, the District Court's finding that, in lieu of maintenance beyond the age of majority, Roullier had voluntarily agreed to assume the responsibility of paying for college was not an abuse of discretion. *Roullier*, 229 Mont. at 357, 746 P.2d at 1086-87.

¶22 Lori contends, and we agree, that her testimony does not rise to the level of consenting to set aside a portion of the marital estate to pay for her son's education. Both Lori and Richard testified that Richard's parents offered to pay for their son's education once he reaches the age of majority. Also, Richard testified that in his mind, prior to these proceedings, he had dedicated one of their accounts to go towards their son's education including preparatory, undergraduate and graduate school, in case scholarships or the grandparents' funding do not materialize. Lori testified that she was aware of such account

9

only recently, and to fund her son's education, she was counting on the grandparent funding or scholarships. If neither materialize and if her son's work efforts did not cover expenses, she testified that she intended to contribute to his higher education goals.

¶23 While this testimony may indicate a desire to share in responsibility for the cost of education for their son after he reaches the age of majority, the District Court did not designate a responsibility for such support, as was done in *Roullier*. Instead, the District Court allocated assets of the marital estate for support of Lori and Richard's son after he reached the age of majority, contrary to § 40-4-202(2), MCA. Once their son reaches the age of majority, the Haberkern's support obligation ends, because there is no evidence that their son is incompetent or has special needs. The record is void of specific evidence pertaining to a voluntary agreement to extend such support of their son beyond his majority status. Therefore, we conclude the District Court abused its discretion when it created the educational trust for the Haberkern's son past the age of eighteen. Thus, the Findings of Fact, Conclusions of Law and Judgment should be amended to reflect that once their son reaches the age of eighteen, the funds remaining shall be distributed to the parties in the percentages designated by the District Court.

¶24 Finally, we address the District Court's exclusion of the North Carolina farmland from the marital estate. Section 40-4-202(1), MCA, provides for equitable distribution of pre-acquired property, requiring a district court to take into consideration the contributions of the non-acquiring spouse to its preservation or appreciation. *Stoneman v. Drollinger,* 2000 MT 274, ¶ 18, 302 Mont. 107, ¶ 18, 14 P.3d 12, ¶ 18. The non-acquiring spouse is entitled to an equitable share of only the appreciated or preserved value which is attributable

10

to his or her efforts. *In re Marriage of Rolf*, 2000 MT 361, ¶ 46, 303 Mont. 349, ¶ 46, 16 P.3d 345, ¶ 46. Additionally, the non-acquiring spouse is not entitled to a share of the increase in premarital property when the property's appreciation is due simply to market factors. *Steinbeisser*, ¶ 47.

¶25 The District Court found the existing real property on Richard's North Carolina farmland to be largely part of Richard's premarital property, therefore the court included a very limited amount of it in the marital estate. Lori maintains that her efforts acting as general contractor for the house they built on the subject land, contributing $20,000 to build a swimming pool and to install associated landscaping, working the farmland, caring for their son almost exclusively, and assisting in building and maintaining roads on the property required the court to include more of the property as part of the marital estate. In urging us to reverse the District Court, Lori relies upon *In re Marriage of Turner* (1983), 206 Mont. 292, 295, 670 P.2d 568, 570, where we said "[i]t is difficult to conceive of a marriage where absolutely no contribution is made by one spouse" to argue that her contributions as a homemaker were not considered when excluding the farmland from the marital estate.

¶26 Conversely, Richard fully acknowledges Lori's single monetary and other non-monetary contributions to the construction of their home on the farmland. However, he asserts that her contribution was destroyed on April 25, 1997, when their house burnt to the ground. He maintains that the insurance settlement, specifically including the $20,000 spent on the pool installation, constituted her contribution, both monetary and non-monetary, to the marital estate in regards to the North Carolina farmland. Furthermore, he claims that both parties converted the settlement money into the Smith Barney Accounts and

replacement property in Flathead County. He contends the District Court was correct in finding that the land is now returned to the status prior to construction of the house and only market conditions have contributed to its appreciation. We agree.

¶27 We conclude that the District Court did, in fact, consider Lori's contributions to the farmland in reference to its preservation or appreciation. Both parties presented ample testimony and evidence addressing the farmland and perspective contributions. While required to consider such contributions, district courts are vested with broad discretion to consider such evidence, determine fair distributions and exclude assets or property from the marital estate. *See Harper v. Harper*, 1999 MT 321, ¶ 36, 297 Mont. 290, ¶ 36, 994 P.2d 1, ¶ 36. While Lori may have contributed to the appreciation of the farmland with the improvements on it, the insurance settlement accommodated such contributions.

¶28 To summarize, the District Court's Findings of Fact regarding the valuation of the seven reduced Smith Barney Accounts and direction to establish a trust account for their son past the age of eighteen were clearly erroneous, however, the court's findings regarding the North Carolina farmland were not erroneous. Consequently, the District Court abused its discretion by creating a trust fund for the Haberkern's son past the age of majority and by valuing the Smith Barney Accounts at a discount to accommodate eventual tax consequences. We, therefore, reverse the District Court on these issues and remand for further proceedings. We refrain from determining whether the District Court equitably divided the marital estate because the remanded issues will have an effect on such determination.

ISSUE TWO

¶29 Whether the District Court erred when it failed to compute the child support

12

obligation of Richard to Lori for their minor son.

¶30 The District Court found that although neither party expected to earn significant wages from employment, both would be able to generate income assets from the property allocated to them. As such, it determined that under the circumstances neither party should be directed to pay child support in care of the other, thus sharing equally in the costs of supporting their son. The court specified that each party shall pay for their son's usual and recurring expenses while in his or her respective care and that each extracurricular activity expense should be equally shared. The court also found that Richard should continue to provide health insurance for their son and both parties would share in uncovered health-related costs. Therefore, it did not allocate a child support obligation from Richard to Lori.

¶31 A presumption exists in favor of the district court's determination of child support and this Court will not overturn its findings unless the court abused its discretion. *In re Marriage of Martinich-Buhl*, 2002 MT 224, ¶ 14, 311 Mont. 375, ¶ 14, 56 P.3d 317, ¶ 14. Section 40-4-204, MCA, and the Montana Child Support Guidelines delineate the considerations a district court is responsible to address in determining child support obligations. Particularly, § 40-4-204(3)(c), MCA, requires a district court to state reasons for not ordering child support in the case where it does not order a parent to pay such support when he may have a duty of support. *See Rolfe v. Rolfe*, 234 Mont. 294, 301, 766 P.2d 223, 227. The purpose of requiring the district court to consider these issues "is to ensure that there is an evidentiary basis upon which a court's child support determination [or lack thereof] is based." *In re Marriage of Cowan* (1996), 279 Mont. 491, 498, 928 P.2d 214, 219 (citing *In re Marriage of Kukes* (1993), 258 Mont. 324, 328, 852 P.2d 655, 657).

¶32     We have held that a district court's failure to provide findings establishing that the court properly considered the required criteria when granting child support to one party constitutes an abuse of discretion. *In re Marriage of Griffin* (1993), 260 Mont. 124, 140, 860 P.2d 78, 88. Conversely, we have remanded in order for the district court to explicitly state reasons for not ordering child support. *In re Marriage of Kuzara*, 224 Mont. 124, 129-30, 728 P.2d 786, 789.

¶33     Lori argues that the District Court abused its discretion when it failed to consider each party's income, assets and liabilities when it did not compute a child support obligation of Richard to her. Richard countered asserting that the District Court's determination was reasonable under the circumstances of both party's earning potential and assets.

¶34     This Court has repeatedly held that the district court sits in the best position to judge the credibility of testimony and proffered evidence, and as such, we will defer to its resolution of any conflicting evidence. *Rolf*, ¶ 52. While both parties have a duty to support their child, here, the District Court stated its reasons, based upon the evidence presented, for not ordering one party to pay child support in care of the other party in compliance with § 40-4-204, MCA. We conclude that Lori has failed to make a showing that the District Court's Findings of Fact were not supported by substantially credible evidence; nor has she identified how the court misapprehended the effect of the evidence. Therefore, we affirm the District Court and hold that it did not abuse its discretion when it issued its Findings of Fact regarding no computation of child support.

¶35     To conclude, we reverse and remand as to the valuation of the marital estate and direct the District Court to re-determine the value consistent with this Opinion. We affirm the

District Court's decision to refrain from awarding either party child support.

/S/ JIM REGNIER

We Concur:

/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JIM RICE