No. 85-577

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

IN RE THE MARRIAGE OF
HARVEY C. SWANSON,

        Petitioner and Appellant,

   and

NANCY E. SWANSON,

        Respondent and Respondent.

_____

APPEAL FROM: District Court of the Eleventh Judicial District,
           In and for the County of Flathead,
           The Honorable Frank I. Haswell, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        George B. Best, Kalispell, Montana

    For Respondent:

        Stephen C. Berg, Kalispell, Montana

_____

Submitted on Briefs: Feb. 26, 1986

Decided: April 3, 1986

Filed: APR 3 - 1986

_____
             Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Harvey Swanson appeals the August 26, 1985, decree of the Eleventh Judicial District Court, County of Flathead, dissolving the marriage of the parties, distributing the marital estate, establishing child custody and child support, and awarding maintenance to Nancy Swanson. We affirm the decree.

Harvey and Nancy Swanson began living together in 1971 while Harvey was attending medical school. They were married June 2, 1973, and remained together until June of 1983.

During the course of the marriage, Harvey finished medical school, completed his internship and practiced medicine in at least three different locations. In 1980, the couple moved to Kalispell, Montana. In 1981, Harvey took over the practice of a deceased Kalispell doctor. He also works in the emergency room of the Kalispell hospital.

Nancy is college educated in marine biology. In recent years, she has primarily worked in the home and waitressed. A son was born prematurely in the fall of 1975. He has undergone intestinal surgery, open heart surgery and two eye surgeries. He still experiences neurological difficulties, learning disabilities and motor control problems. Since his birth, most of Nancy's time and energies have been directed toward her son. When her husband left in 1983, Nancy began plans to operate a greenhouse out of her home. The business has not yet opened, but will eventually provide Nancy with a means of support.

Harvey's medical practice has blossomed. In 1984 his gross income, after paying his employees, was $109,000. He also has Keogh and IRA accounts totalling over $58,000. The

2

medical practice was valued at $127,200; $76,700 of which is goodwill.

In a well-reasoned and detailed decree, the District Judge valued the marital estate as of the date of dissolution at $254,374. After awarding Nancy $48,000, the amount of her inheritance directly traceable to present day assets, the trial judge divided the remainder of the estate equally between the parties. Nancy's share consists of: 1) a $17,000 lump sum payment from Harvey due September 15, 1985; 2) the unpaid principle balance on the family home, $46,200, which is to be paid by Harvey; and 3) $10,000 annual payments commencing in November of 1987 and running until Harvey's obligation to Nancy is fulfilled. The decree also awarded Harvey and Nancy joint custody of their son, Colin, with Nancy designated as the primary residential parent. Harvey was ordered to make $890 a month child support payments and $300 a month education fund payments to Nancy. In addition, maintenance payments from Harvey to Nancy were ordered as follows:

1) the monthly $568 payment on the family home through December 15, 1986; and

2) commencing, January 15, 1987, and continuing for five years from the date of the decree, $450 a month maintenance payments.

Finally, the trial judge ordered Harvey to pay Nancy $3,400 for attorney's fees.

In his appeal of the decree, Harvey asserts that the District Judge abused his discretion in the following respects:

1. In requiring Harvey Swanson to pay Nancy Swanson $890 a month child support and $300 a month toward Colin's education fund.

3

2.  In awarding maintenance to Nancy Swanson.

3.  In valuing the marital estate as of the date of dissolution rather than the date of separation.

4.  In valuing the good-will of Harvey's practice at $76,700.

5.  In awarding $3,400 in attorney's fees to Nancy Swanson.

## CHILD SUPPORT

Contrary to Harvey's contentions in his brief on appeal, the statute governing child support is § 40-4-204, MCA. Section 40-4-202, MCA, relied on by Harvey, pertains to the distribution of the marital estate between the parties.

Section 40-4-204(1), MCA, requires the trial judge to consider the financial resources of the child and the custodial parent, the standard of living the child would have enjoyed had the parties remained married, the physical and emotional condition of the child, his educational needs and the financial resources and needs of the noncustodial parent. These factors were each given in-depth consideration by the trial judge.

The trial judge was well aware of Nancy's and Colin's financial resources as their only resources are those awarded Nancy in the dissolution decree.

Since his father's income exceeds $100,000 a year, Colin would have obviously enjoyed a very high standard of living had his parents remained married. Conclusion of law number three notes the judge's consideration of this fact.

Findings of fact numbers five and 23 concern Colin's physical problems and learning difficulties. Finding of fact 23 and conclusion of law number five refer to the special educational needs of Colin.

4

Finally, the trial judge in findings of fact numbers 19 and 20 notes Harvey's financial situation. The contingent nature of Harvey's work in the emergency room is irrelevant. He was earning money from that job at the time of the decree. The trial judge was required to consider that income. Section 40-4-204(1)(e), MCA.

The child support and educational fund awards are clearly supported by the evidence before the trial judge. Colin's needs are more specialized than the normal ten year old. He requires language therapy and physical therapy. Individualized instruction in various sports which emphasize coordination could also prove helpful. Colin's father has the financial ability to provide this education for his son. We find no abuse of discretion by the trial judge.

## MAINTENANCE

Section 40-4-203, MCA, governs when maintenance should be awarded. Harvey's major objection appears to be over the length of the award, five years. Section 40-4-203(2), MCA is thus particularly relevant:

> (2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, and after considering all relevant facts including:
> (a) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
> (b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
> (c) the standard of living established during the marriage;
> (d) the duration of the marriage;
> (e) the age and the physical and emotional condition of the spouse seeking maintenance; and
> (f) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

Again, each of these factors was considered by the trial judge. Harvey relies heavily on Nancy's testimony that in

5

two to three years she will be able to support herself with monies earned through operation of the greenhouse. In fact, Nancy testified that she hoped to be netting $5,000 annually from the greenhouse in two to three years. This testimony was hopeful speculation. Even if Nancy succeeds in this goal, $5,000 a year certainly will not allow Nancy to live within the standard established during her marriage.

A large amount of Nancy's share in the estate is non-liquid. Over $38,000 of the $48,000 recognized as her inheritance is tied up in her house. The majority of the other lump sum payments have gone to the greenhouse. The $10,000 annual payments do not start until November of 1987. Even then, Nancy's standard of living will be far lower than that to which she has grown accustomed. The trial judge did not abuse his discretion in awarding Nancy maintenance for five years.

## VALUATION OF THE MARITAL ESTATE

### Time of Valuation

The general rule provides that the value of the marital estate should be determined at or near the time of dissolution. Vivian v. Vivian (1978), 178 Mont. 341, 344, 583 P.2d 1072, 1074. In In re the Marriage of Wagner (Mont. 1984), 679 P.2d 753, 758, 41 St.Rep. 409, 416, however, this Court recognized "that unique circumstances of marital relationships can modify this generally-accepted date of valuation of assets." The trial judge found no "unique circumstances" in this case to justify valuing the estate as of the date of separation. Neither do we.

Harvey argues that he should not be penalized for investing his money in retirement funds during the separation if Nancy is not penalized for investing her money in the greenhouse. However, Harvey has sources of income other than

6

the retirement funds. Nancy's sole source of income outside her marriage is the greenhouse. We find no abuse of discretion by the trial judge.

## Goodwill

Harvey Swanson also objects to the consideration by the trial judge of the goodwill associated with his medical practice. Harvey contends that his practice has no goodwill. The trial judge valued the goodwill of the practice at $76,700 and included this amount in the marital estate. Once again we find no abuse of discretion.

This Court recognized the existence of the goodwill of a professional practice and included it in the marital estate in In re the Marriage of Hull (Mont. 1986), 712 P.2d 1317, 43 St.Rep. 107. In Hull, the trial judge relied on the testimony of a certified public accountant (CPA) hired by the wife in determining the value of the goodwill of an anesthesiologist's practice. Likewise, here the trial judge relied on the testimony of a CPA hired by the wife. We find no error. The CPA had recent experience in valuing the goodwill of medical practices. She had access to all relevant records from the medical practice. The method of valuation was reasonable and essentially unrebutted. Harvey's expert on the subject was not even aware that goodwill is recognized in Montana. Nor did he have access to Harvey's accounts receivable. The CPA's testimony was "understandable, substantial in nature, and reasonable." Hull, 712 P.2d at 1323, 43 St.Rep. at 114.

## Valuation of the Retirement Funds

Harvey objects to the failure by the District Court to consider his tax obligations on the retirement funds. There is no evidence that Harvey intended to liquidate those funds to pay his marital obligation. The current value of those

7

funds is not affected by taxes. Therefore, there is no error in the Court's refusal to consider tax consequences at this time.

## ATTORNEY'S FEES

Harvey's last contention is that the trial judge erred in ordering him to pay Nancy $3,400 in attorney's fees. The order is valid pursuant to § 40-4-110, MCA.

> Costs - attorney's fees. The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under chapters 1 and 4 of this title and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

The award of attorney's fees under this statute is "largely discretionary with the District Court, and we will not disturb its judgment in the absence of an abuse of that discretion." In re the Marriage of Milanovich (Mont. 1985), 697 P.2d 927, 929, 42 St.Rep. 436, 439, quoting Talmage v. Gruss (1983), 202 Mont. 410, 412, 658 P.2d 419, 420.

The decision of the District Court is affirmed in all aspects.

_____
Justice

We concur:

_____

_____

_____

_____
Justices