No. 91-583

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN RE THE MARRIAGE OF
MARK LOPEZ,

       Petitioner and Appellant,

  and

LAURI LOPEZ,

       Respondent and Respondent.

**FILED**

OCT 2 9 1992

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

        E. Lee LeVeque, Conklin, Nybo, LeVeque & Murphy,
Great Falls, Montana

      For Respondent:

        Daniel L. Falcon, Matteucci, Falcon & Squires, Great
Falls, Montana

Submitted on Briefs:  July 30, 1992

Decided:  October 29, 1992

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant Mark Lopez appeals from the findings of fact, conclusions of law, and decree of dissolution entered by the District Court of the Eighth Judicial District, Cascade County. At issue is the District Court's valuation and distribution of the marital estate. We affirm.

We phrase the issues to be considered as follows:

1. Was the District Court's valuation of appellant's interest in Century Financial Services, Inc., and the Century Court Partnership clearly erroneous?

2. Did the District Court abuse its discretion in finding that a school loan taken out by respondent after the separation, but prior to the dissolution, was a marital debt to be considered in the valuation and distribution of the marital assets?

3. Was the District Court clearly erroneous in finding that a bank account of $2,577.13 was an asset of the marital estate?

4. Was it an abuse of discretion for the District Court to admit into evidence respondent's Exhibit D, a report prepared by respondent's expert witness?

Appellant Mark Lopez and respondent Lauri Lopez were married on June 18, 1977, in Cascade County, Montana. Two minor children were born during the marriage. The children were ages nine and seven at the time of the dissolution. The parties separated in April 1990, and Mark filed a petition for dissolution on May 24, 1990.

2

At the time of the parties' marriage, Mark was employed as a service station attendant. Approximately three years after their marriage, Mark began selling insurance for an insurance company in Great Falls. The District Court found that during the marriage Mark excelled as an insurance salesman. Mark left the insurance company he had been working for, and in the fall of 1987, along with three other individuals, formed Century Financial Services, Inc. (CFS). CFS is primarily involved in the sale of life, health, and disability insurance. Mark is the only employee of CFS and owns 30 percent of the stock.

In the spring of 1989, Mark and the other three shareholders in CFS, formed the Century Court Partnership (partnership). The only asset of the partnership is a commercial building in Great Falls which houses CFS's office. Mark has a 25 percent interest in the partnership. The commercial building was purchased for $231,000, with Mark's 25 percent interest costing him an initial investment of $7500.

Prior to the marriage, Lauri had been a student at the University of Montana. Immediately prior to the marriage, Lauri returned to Great Falls and obtained an associate degree in criminal justice from the College of Great Falls. Lauri worked full time until the spring of 1990 when her employment was terminated through no fault of her own. Following her termination, Lauri unsuccessfully sought employment. Lauri is currently in college working toward a degree in special education. After the separation, but prior to the dissolution, Lauri obtained a student

3

loan in the amount of $4000 to enable her to continue her education.

The bench trial in this matter began on March 29, 1991, and concluded on April 2, 1991. On June 17, 1991, the court entered the final decree of dissolution. From the findings of fact, conclusions of law, and decree of dissolution entered by the District Court, Mark brought this appeal. Mark alleges that the District Court's findings regarding the valuation of several assets of the marital estate were clearly erroneous and must be reversed. The parties stipulation prior to trial regarding child custody, child support, and visitation was adopted by the District Court in the final decree of dissolution and is not at issue in this appeal.

I

Was the District Court's valuation of appellant's interest in his insurance business and the Century Court Partnership clearly erroneous?

Mark attacks the findings, conclusions, and decree entered by the District Court as they relate to the valuation and distribution of the marital estate. In the past, district court decisions concerning the division of the marital estate have been reviewed by this court under an abuse of discretion standard. This Court's standard of review in these cases has been recently clarified. The factual findings of the district court relating to the division of marital property will be reviewed using the clearly erroneous standard. In re Marriage of Sacry (Mont. 1992), 833 P.2d 1035, 49 St. Rep. 452; Rule 52(a) M.R.Civ.P. Concerning this Court's review

4

of conclusions of law made by a lower court "[w]e are not bound by the lower court's conclusions and remain free to reach our own." Schaub v. Vita Rich Dairy (1989), 236 Mont. 389, 391, 770 P.2d 522, 523. The basis for simply determining if the lower court's conclusions of law are correct is that there is no discretion in determining a question of law. The lower court either correctly or incorrectly applies the law. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 803 P.2d 601.

The courts are obligated to fashion a distribution which is equitable to each party under the circumstances. In re Marriage of Jones (1987), 229 Mont. 128, 745 P.2d 350; § 40-4-202, MCA. Working in equity, the courts must seek a fair distribution of the marital property using reasonable judgment and relying on common sense. Reaching this equitable distribution will at times require the court to engage in discretionary action which cannot be accurately categorized as either a finding of fact or a conclusion of law. These discretionary judgments made by the trial court are presumed to be correct and will not be disturbed on appeal absent an abuse of discretion by the lower court. Meridian Minerals Co. v. Nicor Minerals, Inc. (1987), 228 Mont. 274, 742 P.2d 456.

Mark's first issue concerns the District Court's valuation of his interest in his insurance business and the Century Court Partnership. The District Court found that Mark's interest in his business was $100,240, and his interest in the partnership was $17,000.

We will first review the District Court's valuation of Mark's interest in his insurance business. The court's valuation of $100,240 was based on goodwill, the only asset of the business. Mark concedes that the value of goodwill in a business is to be considered a part of the marital estate and may properly be distributed between the parties. In re Marriage of Arrotta (1990), 244 Mont. 508, 797 P.2d 940. It is the District Court's valuation of the goodwill in this instance which is disputed by Mark.

Lauri presented testimony at trial from Jack Stevens, a certified public accountant. Mr. Stevens was asked to prepare a valuation of Mark's business. In preparing the valuation, Mr. Stevens relied on various authorities and information, most of which he included in a written report. This report, respondent's Exhibit D, was introduced into evidence at trial over Mark's objection. The method used by Mr. Stevens to calculate the value of goodwill in this case is similar to the method approved of by this Court in In re Marriage of Hull (1986), 219 Mont. 480, 712 P.2d 1317. The method used by Mr. Stevens requires the capitalization of the income generated by the business over and above what the individual would have earned as a salaried employee without the business. These excess earnings or discretionary cash, when capitalized using the appropriate formulas, result in a valuation for goodwill. As the amount of excess earnings increases, so will the value of goodwill. Using this method, Mr. Stevens calculated the value of goodwill in Mark's business at $102,240.

Mark does not take issue with the method employed by Mr. Stevens in determining the value of goodwill. Mark argues that the wrong numbers were used in the formula, resulting in an exaggerated value for goodwill. Mark called Marshall Bertsch, an accountant, to testify. Mr. Bertsch was asked to use the same formula, but was asked to use a higher number for what Mark's salary would have been without his business. Mr. Bertsch arrived at a value of $37,039.60 for goodwill in the business. Additionally, Mark called two associates in the insurance industry who testified that the value of goodwill in the business was very little or nothing.

In a dispute over the value of property in a marriage dissolution, the District Court may assign any value that is within the range of values presented into evidence. In re Marriage of Kramer (1987), 229 Mont. 476, 747 P.2d 865. In this instance, the District Court, after weighing all the evidence and the credibility of the witnesses, found the value of the goodwill in the business to be $100,240. This value was within the range of figures presented. The finding of the District Court as to the value of the business in not clearly erroneous.

Mark also disputes the District Court's valuation of his interest in the partnership. Mark had a 25 percent interest in a partnership which owned as its sole asset a commercial building located in Great Falls. The building was purchased in 1988 for approximately $231,000. Mark's share of the initial investment in the building was $7500. At the time of trial, the outstanding loan balance on the building was $207,000.

7

No evidence was presented by Mark concerning the fair market value of the building at the time of trial. When asked on direct examination, Mark answered that he did not know the fair market value of the building. However, evidence was presented that the partnership agreement provided that in the event of the death of a partner the value of the building would be considered to be $275,000. The District Court adopted this figure, subtracted the outstanding balance on the loan, and determined that the partnership equity in the building was $68,000. Mark's 25 percent interest in the building was valued at $17,000. The District Court's valuation of Mark's interest in the partnership was not clearly erroneous.

II

Did the District Court abuse its discretion in finding that a school loan taken out by Lauri after the separation, but prior to the dissolution, was a marital debt to be considered in the valuation and distribution of the marital estate?

Following the parties' separation, Lauri's employment was terminated through no fault of her own. When she was unable to find other employment, Lauri decided to go back to school. In order to do so, she took out a student loan in the amount of $4000 prior to the time of dissolution. The District Court considered this debt in determining the net marital estate. Mark argues that the debt should not have been included.

The well-settled rule in Montana is that absent unique circumstances, the marital estate should be valued at or near the

8

time of dissolution. In re Marriage of Swanson (1986), 220 Mont. 490, 716 P.2d 219. However, the appropriate time for valuing the marital estate cannot always be tied to some specific time or event in the dissolution process and the District Court must exercise discretion in determining the proper time for valuation. In re Marriage of Wagner (1984), 208 Mont. 369, 679 P.2d 753. In some instances, a valuation at or near the time of dissolution may effectuate an injustice because of the nature of the assets or the course of conduct by the parties. In re Marriage of Gebhardt (1989), 240 Mont. 165, 783 P.2d 400. The unique circumstances found in the Gebhardt case requiring valuation at a time other than the time of dissolution, are not present in this case. The District Court did not abuse its discretion by including Lauri's student loan debt in the marital estate.

III

Was the District Court clearly erroneous in finding that a bank account of $2,577.13 was an asset of the marital estate?

The District Court included in the net marital estate $2,577.13 that Mark had in a checking account. Mark testified at trial that following the separation the parties decided to equally divide certain assets and that the $2,577.13 represented his half. On appeal, Mark contends that the amount should deducted from the net assets of the estate, or that an equivalent amount should be charged to the wife. While the record regarding this matter is less than enlightening, it appears that Lauri testified at trial that the $2,577.13 in question was earned during the marriage and

9

that she did not receive an equivalent amount of money. The evidence was conflicting as to whether an equal division of some assets occurred following the separation. In light of the District Court's opportunity to observe and judge the credibility of the witnesses, we cannot say that the court's determination in this matter was clearly erroneous.

IV

Was it an abuse of discretion for the District Court to admit into evidence respondent's Exhibit D, a report prepared by respondent's expert witness?

Rulings on the admissibility of evidence are within the discretion of the district court. Cooper v. Rosston (1988), 232 Mont. 186, 756 P.2d 1125. Absent an abuse of discretion, this Court will not reverse a district court's ruling on the admissibility of evidence. Cooper, 756 P.2d at 1127. However, an abuse of discretion by a district court in allowing into evidence that which properly should have been excluded is not always grounds for reversal. In order for the abuse of discretion to warrant a reversal, it must be so significant so as to materially affect the substantial rights of the complaining party. Rule 61, M.R.Civ.P.; Zeke's Distributing Co. v. Brown-Forman Corp. (1989), 239 Mont. 272, 779 P.2d 908.

Mark alleges that much of the material in respondent's Exhibit D, which was admitted into evidence over objection, is inadmissible hearsay and materially affected his substantial rights. Lauri's expert testified concerning much of the material

10

which was contained in the report. While some of the material in the report may have been inadmissible hearsay, there is no evidence showing that the admission of the report materially affected Mark's substantial rights. There has been no showing that the District Court relied on any inadmissible material or that Mark was prejudiced in any way.

Affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices