No. 99-324

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 70N

IN RE THE MARRIAGE OF

VALERIE JAMIESON,

Petitioner/Respondent,

and

ROY SCOTT JAMIESON,

Respondent/Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Susan P. Watters, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Lee Rindal, Rindal Law Firm, Billings, Montana

For Respondent:

Jill Deann LaRance, Gillen, LaRance & Syth, Billings, Montana

Submitted on Briefs: February 16, 2001
Decided: April 24, 2001

Filed:

_____

Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Roy Scott Jamieson (Scott) appeals from the District Court's Findings of Fact and Conclusions of Law entered on March 9, 1999 by the Thirteenth Judicial District Court, Yellowstone County, apportioning the marital estate of the parties. We affirm.

¶3 Scott raises two issues on appeal. We restate them as follows:

**4 1. Whether the District Court erred in allocating to the husband a post-separation deficiency judgment related to debt on the vehicle used by the wife.**

**¶5 2. Whether the District Court erred in failing to grant the husband a credit for child support payments voluntarily paid to the wife during the separation for a child who was not a child of the marriage.**

### Factual and Procedural History

¶6 Valerie Jamieson and Roy Scott Jamieson were married on May 2, 1990. Valerie filed a petition for dissolution in November of 1997. Scott worked during the marriage as a driller's helper, and Valerie studied during the marriage to become a paralegal and had begun work in that field at the time of dissolution.

¶7 The parties have no children in common. However, Valerie has several children from previous relationships, including a daughter, Allysia. At some point during the marriage, the parties initiated the process for Scott to adopt Allysia. Her last name was changed to Jamieson, and her birth certificate was changed so that Scott appeared as Allysia's father, but the adoption process was never completed. Scott testified at trial that he believed the adoption had been finalized, but conceded that he never went to

court for a hearing on the matter. Valerie claims that Scott always knew the adoption was not final. However, in her initial petition for dissolution, Valerie claimed that Allysia was a child of the marriage and requested child support, and when the parties separated, Scott agreed to pay child support for Allysia during the separation. Scott paid Valerie a total of $2450.

¶8 Sometime during the separation, Valerie and Allysia began living with a convicted pedophile, so Scott sought and obtained temporary custody of Allysia. Valerie then filed an amended petition for dissolution, eliminating any request for support and provisions for visitation, and ultimately admitting that Allysia had never been formally adopted by Scott. At this point, Scott discontinued making child support payments for the benefit of Allysia.

¶9 The parties did not have a large amount of property to divide, but they did have a significant amount of debt. When they separated, Scott and Valerie divided their personal belongings and agreed to each retain one of their two automobiles. Scott kept the couple's 1996 Geo Metro and Valerie kept their Chevy Corsica. Each was to make the scheduled loan payments for their respective cars. Valerie, for whatever reason, did not make the payments on the Corsica loan and the car was ultimately repossessed. A deficiency judgment was obtained by the Corsica creditor against both parties.

¶10 As the parties were able to agree on the distribution of property, the primary task of the District Court was to determine how the debts should be distributed. Each of the parties had student loans and there were a variety of other debts including medical bills, the judgment related to the Corsica, and miscellaneous other liabilities. At the time of dissolution, both parties were employed, but Valerie had relatively high monthly expenses while Scott's monthly expenses were relatively low. The District Court determined that Scott was in a better financial position to pay the marital debts of the parties, and allocated them accordingly.

¶11 In the final division, Scott received the parties' remaining vehicle as well as a camper owned by the parties. Each received $500 in proceeds from the sale of their residence, which the District Court ordered to be applied toward marital debts. The District Court divided the liabilities so that each party retained his or her own student loan and loans to their respective relatives. Valerie's student loan obligation was $26,835.75, which was the largest single debt of the parties. The remainder of the liabilities were apportioned so that in the final division, Scott received $30,479.70 in liabilities and $7690 in assets. Scott became responsible for many of the parties' remaining debts, including the debt related to the repossessed car. His final share of the estate was -$22,789.70. The District Court allocated $32,257.85 in debt to Valerie, inclusive of her student loan obligation, which was offset by her $500 from the sale of the residence. Valerie's final share of the marital estate was -$31,757.85.

¶12 Scott appeals from the distribution of the marital estate, claiming the District Court erred in not granting him a credit for the child support payments made during separation, and erred in allocating the debt related to Valerie's car to him.

## Standard of Review

¶13 We review a district court's division of marital property to determine whether the factual findings on which it relied are clearly erroneous. *In re Marriage of Stufft* (1996), 276 Mont. 454, 459, 916 P.2d 767, 769. If the findings are not clearly erroneous, we will affirm the distribution of property unless the district court abused its discretion. *In re Marriage of Engen,* 1998 MT 153, ¶ 26, 289 Mont 299, ¶ 26, 961 P.2d 738, ¶ 26. We review the district court's conclusions of law de novo and examine whether the court correctly interpreted the law. *In re Marriage of Danelson* (1992), 253 Mont. 310, 317, 833 P.2d 215, 219-20. Discretionary judgments made by the trial court that are not accurately categorized as either a finding of fact or conclusion of law are presumed to be correct and will not be disturbed on appeal absent an abuse of discretion by the lower court. *In re Marriage of Rock* (1993), 257 Mont. 476, 480, 850 P.2d 296, 298. In a marriage dissolution proceeding, the test for abuse of discretion is whether the district court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *In re Marriage of Meeks* (1996), 276 Mont. 237, 242, 915 P.2d 831, 834.

## Issue 1

**¶14 Whether the District Court erred in allocating to the husband a post-separation deficiency judgment related to debt on the vehicle used by the wife.**

¶15 In the final division of property, one of the debts allocated to Scott was the deficiency judgment related to a loan on a car that was used by Valerie but was ultimately repossessed because the payments were not made. Scott argues that because Valerie had sole access to the vehicle during the separation and the deficiency judgment was caused by her failure to make the necessary payments, she should be solely responsible for the debt. The District Court, however, found that this was properly categorized a marital debt. The court further concluded that Scott was in a better financial position to pay certain of the parties' marital debts, including this one.

¶16 Section 40-4-202, MCA, sets forth the guidelines for distribution of property in a marriage dissolution. It provides in relevant part as follows:

> In a proceeding for dissolution of a marriage . . . the court, without regard to marital misconduct, shall . . . finally equitably apportion between the parties the property and assets belonging to either or both.

This statute vests the district court with broad discretion to apportion the marital estate in a manner which is equitable to each party under the circumstances. *Marriage of Rock*, 257 Mont. at 480, 850 P.2d at 298. At the time of dissolution the District Court concluded that because Scott had relatively low living expenses while Valerie's exceeded her income, he was in a better position to pay certain of the parties' debts, and allocated those debts to him. This conclusion was well within the District Court's discretion.

¶17 Scott argues that the car debt should not be considered a marital debt because Valerie had agreed to make the payments during the separation. However, the well-settled rule in Montana is that absent unique circumstances, the marital estate should be valued at or near the time of dissolution. *In re Marriage of Swanson* (1986), 220 Mont. 490, 495, 716 P.2d 219, 222; *In re Marriage of Lopez* (1992), 255 Mont. 238, 244, 841 P.2d 1122, 1125-26. The District Court found no unique circumstances to justify a departure from this well settled rule, and determined that the deficiency judgment was properly categorized as a debt of the marriage.

¶18 Scott cites *In re Marriage of Wagner,* 208 Mont. 369, 679 P.2d 753, in support of his argument. In *Wagner*, the husband and wife had separated and divided their assets, with the wife signing over any interest in the parties' business. *Wagner,* 208 Mont. at 373-74, 679 P.2d at 755. During the separation, the husband dissipated his share of the assets and greatly increased the debt related to their ranching operation, over which the wife had no control. *Wagner*, 208 Mont. at 373-74, 679 P.2d at 755-56. The wife, meanwhile, began a new ranching operation unrelated to the husband's business, and had no control over the debt on the parties' old business. *Wagner*, 208 Mont. at 373-74, 679 P.2d at 755-56. The *Wagner* court concluded that the extreme circumstances warranted a departure from the rule, and valued the estate at the time of separation rather than at dissolution. *Wagner*, 208 Mont. at 380, 679 P.2d at 758.

¶19 The facts in the present case do not compel a similar result. Although it appears that Valerie agreed to make the payments on the Corsica, Scott admits that he became aware of the pending repossession, understood that the liability on the vehicle was jointly held, and yet did not make the payments. Furthermore, although this particular debt was ultimately allocated to Scott, Valerie was held responsible for most of the parties' joint debt. We hold that under these circumstances, the District Court did not abuse its discretion in allocating the debt to Scott and affirm on this issue.

**Issue 2**

**¶20 Whether the District Court erred in failing to grant the husband a credit for child support payments voluntarily paid to the wife during the separation for a child who was not a child of the marriage.**

¶21 Scott argues that the District Court should have granted him a credit for the child support payments given to Valerie during the parties' separation. Scott claimed that he made the payments based on a good faith belief that he had legally adopted Allysia. While Valerie claimed Scott knew the adoption had

never been finalized, it appears that Valerie may have fostered his belief that the adoption had been concluded, by claiming in the initial petition for dissolution that there was one child of the marriage for whom she requested child support.

¶22 The District Court refused to grant the requested credit. The court concluded that the marital estate must be valued at the time of dissolution, so Scott was not entitled to a credit for voluntary (non-ordered) payments made during the separation. According to the District Court, while Valerie's conduct was "somewhat disingenuous," the child support money had allowed her to make some payments on marital debt during the separation, thus reducing the amount of marital debt to be divided between the parties.

¶23 Without question, Valerie's conduct was completely inappropriate. She misrepresented facts to the District Court in her Petition for Dissolution. Had there not been a custody dispute, she may never have admitted that the adoption had not taken place. The question before us, though, is one of property division and debt allocation. The District Court's conclusion that Scott should not receive the requested credit does find factual support in the record. As an indirect result of the child support payments, the marital debts were reduced. Moreover, Scott ultimately ended up with a smaller portion of the parties' debts than Valerie, as well as most of the remaining assets of the marriage. Given the overall allocation of liabilities and assets, we cannot conclude the District Court's refusal to give a credit for the voluntary child support payments was an abuse of discretion.

¶24 We therefore affirm the District Court.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON

Justice Terry N. Trieweiler dissenting.

¶25 I dissent from the majority opinion, and the increasing tendency to issue opinions which are not to be cited as precedent to minimize the effect of a bad result.

¶26 The majority correctly cites language in § 40-4-202, MCA, which requires that assets and debts be "equitably" apportioned between the parties. However, there is nothing arguably equitable about assigning a deficiency judgment to the husband in this case when the husband offered to help avoid the obligation but the wife refused his assistance. The majority opinion states that ". . . Scott did become

aware of the pending possession, understood that the liability on the vehicle was jointly held, and yet did not make the payments." The fact is Scott did offer to assume liability for the payments if Valerie would transfer possession of the car to him. However, she refused to allow him to take possession of the vehicle so that he could sell it, pay the loan and avoid repossession. She said "she would take care of it." Instead she chose to permit repossession of the vehicle which was then sold for less than the debt which it secured. Now neither party has the vehicle and Scott is saddled with the deficiency judgment. Valerie could have avoided the deficiency judgment and did not. Equity dictates that she assume responsibility for her conduct.

¶27 Neither do I see the equity in denying Scott credit for child support which he was fraudulently induced to pay. First Valerie led Scott to believe that he had legally adopted her child, then she alleged that it was Scott's child in the petition she filed with the district court and under oath when she requested that he provide support for the child. Only after he was granted temporary custody because Valerie was living with a convicted sex offender did she deny his legal relationship with the child.

¶28 The attitude of the majority opinion seems to be that because the parties had more debt than assets, it did not make a lot of difference when the court denied credit for the fraudulently obtained child support. While I agree that in the normal case of property division, it is best for appellate courts to limit their scrutiny to the overall result rather than the details, I would make an exception where the details involve conduct detrimental to the integrity of the judicial process as did Valerie's conduct when she sought child support. By looking the other way, the majority gives its imprimatur to the kind of conduct which will ultimately undermine the integrity of the fact-finding process if not sanctioned.

¶29 For these reasons I dissent from the majority opinion.

/S/ TERRY N. TRIEWEILER