No. 00-661

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 268

IN RE THE MARRIAGE OF

DOROTHY L. HOCHHALTER,

Petitioner and Respondent,

and

CLYDE K. HOCHHALTER,

Respondent and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Clinton H. Kammerer, Attorney at Law, Missoula, Montana

For Respondent:

John H. Gilliam; Skjelset, Gilliam & Geer, Missoula, Montana

Submitted on Briefs: May 17, 2001

Decided: December 18, 2001

Filed:

_____

Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Clyde Hochhalter (Clyde) appeals from the Findings of Fact, Conclusions of Law and Final Decree of Dissolution of Marriage entered by the Fourth Judicial District Court, Missoula County, which, in pertinent part, divided the marital estate of Clyde and Dorothy Hochhalter (Dorothy). We affirm.

¶2 We address the following restated issues:

¶3 1.  Did the District Court abuse its discretion in valuing all of the parties' assets at the time of their 1995 separation?

¶4 2.  Did the District Court abuse its discretion in determining the parties' marital assets?

¶5 3.  Did the District Court abuse its discretion in valuing certain of the parties' marital assets?

¶6 4. Did the District Court abuse its discretion in apportioning the parties' marital estate?

¶7 5. Is Dorothy entitled to sanctions against Clyde in the form of her attorney fees on appeal?BACKGROUND

¶8 Clyde and Dorothy were married August 1, 1970, in Missoula, Montana. They had

three sons, all of whom had reached the age of 18 by the time of this proceeding. Dorothy worked as a teacher for nine years prior to the marriage and continued to work as a teacher thereafter. Clyde worked sporadically before the marriage and later worked for Champion International Corporation from 1974 until 1994, when he was laid off. Thereafter, Clyde worked on a duplex the parties owned as rental property and then moved to Great Falls and began vocational training. Clyde and Dorothy separated several times during the

marriage. In total, the parties were separated for over 12 years during the course of their 29-year marriage. They separated for the final time in January of 1995, after which Dorothy petitioned for dissolution of their marriage in May of 1995.

¶9 During the marriage, Dorothy and Clyde accumulated marital assets including financial accounts, four parcels of real property, three vehicles, and various items of personal property. They took part in two court-mandated settlement conferences in an effort to value and divide these assets; during the second conference in November of 1998, they agreed to value their real property assets as of 1995. Dorothy and Clyde also agreed to have the marital estate divided equally, but did not reach agreement on a specific division of the assets or a valuation for various items of personal property.

¶10 After their final separation in January of 1995, Dorothy lived in the marital home in Missoula and assumed responsibility for the parties' three rental properties, including providing maintenance, management, and rent collection. Clyde lived in and around the Great Falls area. The parties filed separate tax returns, and neither contributed monetary or nonmonetary resources to the other, after the final separation.

¶11 The District Court entered its findings, conclusions, and decree of dissolution on April 7, 2000. Clyde subsequently filed a "Motion and Objection to Findings of Fact, Conclusions of Law and Final Decree of Dissolution of Marriage and Brief." The motion was deemed denied by operation of law when the District Court failed to rule within 60 days. Clyde appeals.

## STANDARD OF REVIEW

¶12 "We review a district court's findings on which division of marital property is based to determine whether they are clearly erroneous." *In re Marriage of Geror*, 2000 MT 60, ¶ 6, 299 Mont. 33, ¶ 6, 996 P.2d 381, ¶ 6 (citation omitted). If the findings are not clearly erroneous, we will affirm the division absent an abuse of discretion. *Marriage of Geror*, ¶ 6 (citation omitted).

## DISCUSSION

¶13 1. Did the District Court abuse its discretion in valuing all of the parties' assets at the time of their 1995 separation?

¶14 The District Court found the marriage between Dorothy and Clyde effectively ended in 1995 when they separated for the last time prior to the dissolution in 2000. It further determined, after reviewing Dorothy and Clyde's agreement valuing their real property as of 1995 and taking into account that they had lived apart since that date, to value all of the marital assets as of 1995.

¶15 Clyde argues the valuation of all marital assets as of 1995 inequitably excludes all increases in the value of the parties' financial assets during the final five-year separation. He acknowledges he agreed to value the real property as of 1995, but contends the remainder of the marital assets should be valued as of the date of dissolution to include any gains in financial accounts and appreciation in property. He relies on *In re Marriage of Swanson* (1986), 220 Mont. 490, 495, 716 P.2d 219, 222 (citation omitted), in which we stated "the value of the marital estate should be determined at or near the time of dissolution."

¶16 Relying on *Marriage of Geror*, ¶ 16, Dorothy contends the District Court did not abuse its discretion in valuing the marital assets at the time of the parties' final separation because their marriage involved unique circumstances rendering *Marriage of Swanson* inapplicable. She further contends that, because she and Clyde agreed to value the real property assets of the marriage as of 1995 and the marriage effectively ended in January of 1995, the court properly valued all the assets as of the time of separation.

¶17 As a general rule, "the value of the marital estate should be determined at or near the time of dissolution." *Marriage of Swanson*, 220 Mont. at 495, 716 P.2d at 222 (citation omitted). However, the unique circumstances of marital relationships can modify this generally accepted date for the valuation of assets. *Marriage of Geror*, ¶ 14; *In re Marriage of Gebhardt* (1989), 240 Mont. 165, 170, 783 P.2d 400, 403; *In re Marriage of Wagner* (1984), 208 Mont. 369, 380, 679 P.2d 753, 758.

¶18 We recently identified some characteristics of a marriage which constituted unique circumstances rendering it appropriate to value marital assets at the time of separation. In *Marriage of Geror*, the parties married in 1987, but lived separately beginning in 1989 and through the time of the marital dissolution in the late 1990s. While living apart, they maintained separate financial and retirement accounts, made separate financial decisions, and contributed neither monetary nor nonmonetary resources to each other. *Marriage of Geror*, ¶¶ 15-16. We concluded the point at which the marital relationship ended for all practical purposes was the relevant time for valuation of the marital estate and that, under

the facts before us, the district court did not abuse its discretion in valuing the marital assets at the time of separation rather than at the time of dissolution. *Marriage of Geror*, ¶¶ 11, 16.

¶19 The present case is similar to *Marriage of Geror.* The record indicates Dorothy and Clyde separated for the final time more than five years prior to the ultimate dissolution of their marriage. After that time, they lived in separate residences in different cities, maintained their own finances, including filing separate tax returns, and maintained their own retirement accounts. Neither Clyde nor Dorothy contributed financially to the other after January of 1995. As in *Marriage of Geror*, the circumstances in this case indicate Dorothy and Clyde "lived separate lives financially and otherwise" after their separation in January of 1995. *See Marriage of Geror*, ¶ 16. Accordingly, we conclude the District Court did not abuse its discretion in valuing the marital assets as of the 1995 separation.

¶20 2. Did the District Court abuse its discretion in determining the parties' marital assets?

¶21 Clyde contends the District Court failed to include several of the parties' financial accounts in the marital estate. According to Clyde, the financial accounts improperly excluded are: 1) Washington National variable annuity #8630008144; 2) a N.W. Mutual account; 3) Washington National account #0012283; 4) A.G. Edwards account #569-009952-079; and 5) an A.G. Edwards money market account. Clyde's contentions in these regards are, to say the very least, inartfully presented.

¶22 With regard to Clyde's assertions that Washington National account #8630008144 was improperly excluded from the marital estate, the record indicates that such an account existed in 1987; however, the record is devoid of any evidence of the existence of that account since that time. Ultimately, "the appellant has the duty to establish error by the district court." *In re Marriage of Pfennigs*, 1999 MT 250, ¶ 33, 296 Mont. 242, ¶ 33, 989 P.2d 327, ¶ 33 (citation omitted). Because Clyde points to no record evidence of the status or existence of this Washington National account since 1987, we conclude he has failed to establish error by the District Court in this regard.

¶23 Clyde also contends the District Court excluded a N.W. Mutual account valued at $3,356, and Washington National account #0012283. We observe the District Court included a Washington National account #122183, with a value of $3,356, in the marital estate. The record with respect to the included Washington National account #122183 also indicates that it may be the same account as the N.W. Mutual account valued at $3,356

given the identical values. Finally, the record reflects the likelihood that the included Washington National account #122183 is the same account as the Washington National account #0012283 to which Clyde refers, based on the similarity of the account numbers. In any event, however, no evidence of record supports the existence of either a N.W. Mutual account or Washington National account #0012283. We conclude Clyde has failed to establish error by the District Court in these regards.

¶24 With regard to Clyde's argument that the District Court failed to include A.G. Edwards account #569-009952-079 and an A.G. Edwards money market account, we observe the District Court did include A.G. Edwards account #569-009952-079 in the marital estate at its 1995 value of $1,925.48. With regard to Clyde's contention that a separate A.G. Edwards money market account exists which was not included in the marital estate, he does not point to any evidence in the record establishing the existence of this account. Accordingly, Clyde has failed to establish error by the District Court in this regard.

¶25 Clyde also asserts the District Court should have included in the marital estate an estimated $30,000 in rental income collected by Dorothy during the parties' final separation. Clyde does not take issue with the District Court's 1995 valuation of the rental properties, nor does he dispute their ultimate distribution. Clyde's primary grievance in this regard is that he paid income taxes on an unstated portion of the rental income during the parties' final separation, but received none of the income from those properties and was not allocated the value of any portion of that rental income by the District Court.

¶26 Clyde points to an exhibit he offered as support for his $30,000 rental income amount. The exhibit, which the District Court admitted for demonstrative purposes only, is not supported by documentation or other record evidence which should have been readily accessible to Clyde if he paid income taxes on it. Moreover, because his exhibit estimates the rental income as approximately $25,000 to $30,000 each year between 1994 and 1999, it does not support his position on appeal that $30,000 in rental income was improperly excluded. Finally, the record is clear that Dorothy assumed the responsibility of maintaining and managing the rental properties during the parties' final separation and that the District Court properly allocated certain associated liabilities, such as delinquent taxes and a security deposit deficit, to her in distributing the marital estate.

¶27 Clyde's argument here is similar to his arguments above: he simply does not point to any evidence of record in support of his contention that the court improperly excluded

$30,000 in rental income from the marital estate. Clyde has failed to establish error in this regard.

¶28 We hold, therefore, that the District Court did not abuse its discretion in determining the parties' marital assets.

¶29 3. Did the District Court abuse its discretion in valuing certain of the parties' marital assets?

¶30 Clyde contends the District Court erred in valuing items included in the marital estate. Specifically, he disputes the valuation of the parties' largest financial account, their respective pensions, and various items of personal property.

¶31 Clyde asserts the District Court erred in valuing the parties' largest financial account-- A.G. Edwards account #569-018927-079--at its $5,342 value in January of 1995, rather than its $25,289 value in March of 1998. We concluded above the District Court did not err in valuing all of the marital assets as of 1995. We also conclude, therefore, that the District Court did not err in valuing this account as of 1995, consistent with the rest of the marital estate.

¶32 Clyde further asserts the District Court inequitably valued and apportioned his and Dorothy's separate pensions, in essence awarding him $420 per month, and Dorothy $822 per month, at retirement. He relies on the retirement value, as opposed to the 1995 value, of the individual pensions. When distributed as part of the marital estate, the value of a pension is its present value. *See In re Marriage of Blades* (1994), 269 Mont. 198, 200, 887 P.2d 735, 736 (citation omitted). Here, the District Court clearly valued the pensions at their present value in 1995, and then distributed Clyde's $38,000 pension to him, and Dorothy's $25,163 pension to her. We conclude the District Court did not abuse its discretion in these regards.

¶33 Clyde further objects to the District Court's valuation of the parties' personal property, specifically a life raft which it valued at $100. Dorothy assigned the raft a value of $100; Clyde gave the raft no value. A district court is free to assign any value to an item of property that is within the range of values offered into evidence. *See In re Marriage of Lopez* (1992), 225 Mont. 238, 243, 841 P.2d 1122, 1125. Because $100 is clearly within the range of values presented, we conclude the District Court did not abuse its discretion in valuing the life raft at $100.

¶34 Finally, Clyde further contends generally that the values the District Court assigned to all other items of personal property are too high. We refuse to address such a conclusory, speculative and unsupported contention.

¶35 We hold the District Court did not abuse its discretion in valuing the parties' marital assets.

¶36 4. Did the District Court abuse its discretion in apportioning the parties' marital estate?

¶37 Clyde correctly asserts that, in their settlement agreement, he and Dorothy agreed to an equal distribution of the marital estate, and contends the District Court failed to distribute the marital assets accordingly. It is true that the distribution of the marital estate, the value of which totaled $407,465.34, favored Dorothy by $1,223.67. This distribution is certainly "equitable" under § 46-4-202, MCA. A district court focuses on the overall distribution of the entire marital estate and not an item by item accounting. *See In re Marriage of Baer*, 1998 MT 29, ¶ 36, 287 Mont. 322, ¶ 36, 954 P.2d 1125, ¶ 36. Moreover, we do not attempt on appeal to review every element of a complex property distribution. *In re Marriage of Gallinger* (1986), 221 Mont. 463, 468, 469, 719 P.2d 777, 781 (citation omitted).

¶38 Here, the "unequal" distribution Dorothy received, and about which Clyde complains, amounts to approximately one-third of one percent of the total value of the marital estate. In other words, the District Court "shorted" Clyde by approximately one-sixth of one percent of the total value. We conclude the distribution is sufficiently equal to meet the terms of the parties' agreement and we hold, therefore, that the District Court did not abuse its discretion in apportioning the marital estate.

¶39 5. Is Dorothy entitled to sanctions against Clyde in the form of her attorney fees on appeal?

¶40 Dorothy seeks sanctions against Clyde under Rule, 32 M.R.App.P., in the form of attorney fees, for having to defend this appeal. In general, we will not impose sanctions unless a party undertakes an appeal that is entirely unfounded and intended to cause delay or unless the appeal constitutes an abuse of the judicial system. *See In re Marriage of Moss*, 1999 MT 62, ¶ 41, 293 Mont. 500, ¶ 41, 977 P.2d 322, ¶ 41. We conclude sanctions are not warranted in this case.

¶41 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JIM RICE

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART