DA 10-0355

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 63

IN RE THE MARRIAGE OF:

JENNY L. WILLIAMS,

Petitioner and Appellant,

and

BOBBY L. WILLIAMS,

Respondent and Appellee.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DR 04-1205
Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Mark D. Parker; Parker, Heitz & Cosgrove, PLLC, Billings, Montana

For Appellee:

Stephen C. Mackey; Towe, Ball, Enright, Mackey & Sommerfeld, PLLP,
Billings, Montana

Submitted on Briefs: March 2, 2011

Decided: April 5, 2011

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Jenny L. Williams (Jenny) appeals from an order entered in the Thirteenth Judicial District, Yellowstone County, that awarded child support and distributed the marital estate of her former marriage to Bobby L. Williams (Bobby).  The District Court's order followed this Court's remand in *In re Marriage of Williams*, 2009 MT 282, 352 Mont. 198, 217 P.3d 67 (*Williams I*).  We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion and *Williams I.*

¶2     We review the following issues on appeal:

¶3     *Did the District Court correctly deny Jenny's motion for a substitution of judge after this Court remanded for further proceedings in Williams I?*

¶4     *Did the District Court correctly omit Bobby's income from B&J Properties for the calculation of child support based on its conclusion that the omitted income never had been used to enhance the children's standard of living?*

¶5     *Did the District Court correctly permit an alternative payment method that allows Bobby to defer payment until 2024 or 2025 when § 40-4-202, MCA, requires a final, equitable apportionment?*

FACTUAL AND PROCEDURAL BACKGROUND

¶6     This Court heard the appeal of the District Court's initial distribution of the Williams's marital estate and award of child support in *Williams I.*  We identified three incorrect conclusions of the District Court and remanded for further proceedings by the District Court.  *Williams I,* ¶ 47.  The District Court did not allow the parties to submit

2

additional trial testimony on remand. The District Court issued its "order pursuant to remand" on July 15, 2010.

¶7    We issued our decision in *Williams I* on August 25, 2009. The case returned to Department 5, the Honorable G. Todd Baugh, who has proceeded over the Williams's dissolution since Jenny filed her petition in 2004. Jenny moved to substitute Judge Baugh. Bobby objected. Bobby argued that no right for substitution under § 3-1-804(12), MCA, existed because this Court had not remanded for a new trial. Jenny argued that the remand required a new trial and entitled her to the substitution. Judge Baugh agreed with Bobby and concluded that Jenny had not asked for a new trial on appeal, that our remand did not require a new trial, and that only he could reconsider apportionment based on the evidence in the record. Judge Baugh interpreted the remand to require a mathematical recalculation based on the existing record. Judge Baugh ordered that the matter be reassigned to his department.


¶8    The parties agreed that remand in *Williams I* required consideration of three issues. The first issue involved the erroneous double deduction of $67,706 that Jenny had withdrawn from a retirement account. The court corrected the matter and neither party appeals the correction. The second remanded issue required a recalculation of Bobby's child support obligation and directed the court to use Bobby's tax returns, B&J Properties' (B&J) financial statements, and any other relevant information to determine objectively Bobby's income for child support purposes. *Williams I,* ¶ 33. The third remanded issue required the court to exercise its broad discretion and equitably reapportion the Williams's marital estate. *Id.* at

¶ 46. We specifically directed the court to reapportion the estate by including the entire value of Bobby's interest in the marital portion of B&J, a closely-held corporation that Bobby co-owns with his father. *Id.* at ¶ 40.

¶9     Both parties briefed the issues on remand and the court heard arguments on February 19, 2010.  The parties changed their positions regarding the need for the court to consider additional evidence from their positions during the substitution of judge proceedings.  Jenny argued that no new evidence could be taken in light of the court's order that the remand did not require a new trial.  Bobby argued that the financial position of the parties had changed substantially and that equitable apportionment pursuant to the factors in § 40-4-202, MCA, required consideration of additional evidence, including increases in Jenny's income and financial hardship experienced by Bobby.  The court declined to take additional evidence and issued its order based on the existing record.

¶10    The court concluded that Bobby's income from B&J had not been used to increase the family's standard of living and ordered that Bobby's child support obligation was to remain at $1,000 per month.  The court also concluded that Bobby owed Jenny an additional $117,633 for her interest in B&J.  The court ordered the $117,633 to be paid with or without interest in any manner agreed upon by the parties.  If the parties could not agree on payment, the court provided an alternative payment arrangement.  The alternative allowed Bobby to pay Jenny 7% of his interest in B&J in 2024 or 2025.  The alternative additionally required that Bobby pay Jenny 7% of any dividends or transfers of money or assets received from

4

B&J before 2024 or 2025. Jenny appeals the District Court's decisions regarding substitution, child support, and the alternative payment arrangement.

STANDARD OF REVIEW

¶11 A district court's determination whether to substitute a judge presents a question of law. *In re Marriage of Toavs,* 2002 MT 230, ¶ 15, 311 Mont. 455, 56 P.3d 356. We review a district court's distribution of marital property and child support award to determine whether the court's findings of fact are clearly erroneous. *Williams I,* ¶ 14. We review for correctness a district court's conclusions of law. *Id.*

¶12 *Did the District Court correctly deny Jenny's motion for a substitution of judge after this Court remanded for further proceedings in Williams I?*

¶13 Section 3-1-804(12), MCA, entitles each party to one motion for substitution of district judge if this Court reverses or modifies a judgment on appeal and remands to the district court for a new trial. Jenny requested on appeal in *Williams I* that we not remand for a new trial because she "would be better off with no relief than an expensive, drawn-out, completely new trial on all of the issues" and that "[t]he record supports all of the relief Jenny requires without the necessity of a new trial on all issues." We directed "the District Court to re-calculate Bobby's child support obligation and reapportion the Williams's entire marital estate." *Williams I,* ¶ 46. We directed the District Court to use tax returns, financial statements, and any other relevant information to determine objectively Bobby's income for child support purposes. *Id.* at ¶ 33. We recognized that our decision likely affected the

5

equitable factors considered by the court and directed the court to "exercise its 'broad discretion' to apportion equitably the estate" consistent with the opinion. *Id.* at ¶ 46.

¶14 We agree with the District Court that we did not remand for a new trial. We remanded for "further proceedings" in *Williams I*, not for a new trial. *Id.* at ¶ 47. The Williams's dissolution proceedings began in 2004. The trial took eight days and extended over six months. The parties did not appeal many of the issues tried and decided in that trial. We also affirmed the court's conclusion regarding maintenance that Bobby raised in *Williams I. Id.* at ¶ 24. We did not contemplate or indicate in *Williams I* that all the issues should be retried.

¶15 We specifically remanded for a reconsideration, recalculation, and reapportionment of the three issues where we reversed the court's conclusions. Judge Baugh sat in the best position to recalculate Bobby's child support obligation and reapportion the marital estate on the existing record without retrying the entire case. We directed the court to use its discretion to consider the equitable factors in reapportioning the marital estate. The District Court concluded that it did not need additional evidence to reapportion the Williams's marital estate and recalculate the child support payments in a manner consistent with *Williams I.* The court correctly concluded that *Williams I* did not require a new trial and that it sat in the best position to reconsider the evidence, recalculate child support payments, and reapportion the estate on the existing record.

¶16    *Did the District Court correctly omit Bobby's income from B&J Properties for the calculation of child support based on its conclusion that the omitted income never had been used to enhance the children's standard of living?*

¶17    The District Court in *Williams I* had determined that Bobby earned $110,000 per year for purposes of child support calculations. The court ordered Bobby to pay child support in the total amount of $1,000 per month for his three children based on the $110,000 income. The court's $110,000 determination omitted additional income that Bobby earned from B&J. Had the District Court included the income from B&J, Bobby's annual income would have increased by about $200,000 per year and his monthly child support payments would have increased to about $5,500. We concluded in *Williams I* that the District Court incorrectly omitted Bobby's income from B&J for the calculation of child support. We remanded for the District Court to determine objectively Bobby's income for child support purposes based on Bobby's tax returns, B&J's financial statements, and other relevant information. *Williams I,* ¶ 33.

¶18    Section 40-4-204(3)(a), MCA, requires the court to determine the child support obligation according to the uniform child support guidelines and the standards in § 40-4-204, MCA. "The guidelines must be used in all cases." Section 40-4-204(3)(a), MCA. The Department of Health and Human Services has established uniform child support guidelines. Admin. R. M. 37.62.101 to 37.62.148. The guidelines define applicable terms, Admin. R. M. 37.62.103; explain how to determine income, Admin. R. M. 37.62.106; provide for the allowable and non-allowable deductions, Admin. R. M. 37.62.110 to 37.62.111; establish

7

percentages to be used for standard of living provisions, Admin. R. M. 37.62.128; and provide guidance in several other areas. The guidelines create a uniform system to be used across the state and prevent litigants from seeking dissolutions in a forum believed to order greater or lesser child support obligations. The Department of Health and Human Services has developed a child support determination worksheet that must be used in all child support determinations under the guidelines. Admin. R. M. 37.62.148.

¶19 Both Bobby and Jenny completed and filed the child support determination worksheet. Jenny calculated Bobby's income according to his reported average income on his 2004-2006 tax returns. She calculated that Bobby's income equaled $267,868 and resulted in a child support obligation of $5,570 per month total for the three children of the marriage. Bobby presented his annual income to be $110,000, obligating him to pay child support in the total amount of $11,442 per year. The difference between Jenny's and Bobby's calculations resulted from Bobby's continued omission of his reportable income from B&J.

¶20 We already have determined that the income that Bobby receives from B&J constitutes actual income for child support purposes. *Williams I*, ¶¶ 31-33. Admin. R. M. 37.62.106 guides the determination of income for child support. *Id.* at ¶ 28. Income includes actual income, imputed income, or any combination thereof that fairly reflects a parent's resources available for child support. Admin. R. M. 37.62.106(1). Actual income includes "economic benefit from whatever source derived," including, but not limited to, income from salaries, wages, earnings, profits, dividends, pensions, interest, trust income,

8

and annuities. Admin. R. M. 37.62.106(2)(a). Actual income also includes "gross receipts minus reasonable ordinary and necessary expenses" for parents who receive income or benefits from an ownership interest in a business. Admin. R. M. 37.62.106(2)(b).

¶21 The District Court acknowledged that the income from B&J constituted an economic benefit to Bobby that must be included as income for child support. The court again decided to omit Bobby's income from B&J and reinstated the $1,000 per month child support obligation. The court reasoned that Bobby did not use his income from B&J to "add to the standard of living" of the children because B&J did not pay out dividends regularly. The court concluded that $1,000 per month met the children's needs and preserved their standard of living. The court's reasoning ignores the fact that Bobby used B&J funds to subsidize his standard of living by paying for an airplane, the airplane's service, his pilot license, a condominium in Arizona, and by paying down company debt that increased Bobby's personal worth. *Williams I,* ¶¶ 31, 40. We fail to see how the court could reason that Bobby had not used B&J income to "add to the standard of living of the parents or the children."

¶22 Admin. R. M. 37.62.106 requires that the actual income of a parent fairly reflect the parent's resources available for child support. Bobby argues that the B&J income does not constitute available income for child support payments. The District Court likened the operation of B&J to a retirement account. B&J uses its profits to pay down its debts, build up its equity, and save on interest. This practice increases Bobby's net worth by about $200,000 per year. We already have rejected the argument that Bobby's income from B&J constitutes mere overstated taxable income. *Williams I,* ¶¶ 31-33. The income constitutes

9

actual disposable income subject to inclusion in the child support calculation. *Id.* If Bobby can build up his value in B&J like a "retirement account," he can use the income to pay child support. We pointed out in *Williams I* that Bobby owns a 50% interest with his father and historically has chosen to spend B&J's income on items other than dividends, including a private plane, condominium, and debt. *Id.* Retirement accounts normally do not allow a person to withdraw funds without penalty to be used to purchase airplanes, condominiums, and pay down corporate debt.

¶23 We reverse the District Court's decision to depart from the child support guidelines. The child support guidelines give guidance for uniform standard of living provisions. Admin. R. M. 37.62.128. The child support guidelines "must be used in all cases." Section 40-4-204(3)(a), MCA. The guidelines provide no exception for income because the income cannot be traced to an increase in the children's standard of living. The principle that parents have the first priority to meet the needs of their children according to their financial ability underlies the child support guidelines. Admin. R. M. 37.62.101(2). A child's standard of living should not be affected adversely because the parents decide to dissolve their marriage. *Id.* The court shall recalculate Bobby's child support obligation pursuant to the child support guidelines and based on Bobby's actual income as determined by Admin. R. M. 37.62.106.

¶24 *Did the District Court correctly permit an alternative payment method that allows Bobby to defer payment until 2024 or 2025 when § 40-4-202, MCA, requires a final, equitable apportionment?*

¶25    Section 40-4-202(1), MCA, requires that the court shall "finally equitably apportion between the parties the property and assets belonging to either or both." Jenny argues that the court's conclusion that Bobby could withhold payment of her interest in B&J until 2024 or 2025 does not comply with the statute's finality requirement. Bobby responds that the court did not abuse its discretion because the awarded value of B&J was "locked up" and could not be presently paid. We agree with Jenny that postponing payment until 2024 or 2025 does not provide the parties with the finality required by the statute.

¶26    Absent unique circumstances, the marital estate should be valued at or near the time of dissolution. *In re Marriage of Lopez,* 255 Mont. 238, 244, 841 P.2d 1122, 1125 (1992). This Court has recognized a limited exception in cases where the nature of the assets or the course of conduct by the parties required appraisal at an earlier time than at formal legal dissolution. *Id.*, 841 P.2d at 1125. The Court has concluded that the date of separation can be used as the appraisal date when one spouse accrued significant wealth and the other accrued significant debts after the parties had separated but before formal dissolution. *In re Marriage of Wagner,* 208 Mont. 369, 380, 679 P.2d 753, 758-59 (1984); *In re Marriage of Gebhardt,* 240 Mont. 165, 169-70, 783 P.2d 400, 402-03 (1989). The limited exception did not apply, however, to a wife's student loans accrued after separation, but before dissolution, when the wife began attending school after a no-fault termination from her job. *In re Marriage of Lopez*, 255 Mont. at 244, 841 P.2d at 1125.

¶27    The unique circumstances of cases such as *Wagner* and *Gebhardt* justified an earlier appraisal date than at the time of formal dissolution. The parties have not cited any cases

11

that support allowing the appraisal to occur at a future date. The parties also have not presented any special factual circumstances that justify a future appraisal. The court had sufficient information before it to evaluate the present value of B&J and determine that Jenny's share equaled $117,633. No reason exists to justify postponing payment of Jenny's share until 2024 or 2025. Payment would provide finality to the parties as the statute requires. Section 40-4-202(1), MCA.

¶28 Jenny does not challenge the District Court's determination that her interest in B&J equals $117,633. Neither party argues that the court's order to pay $117,633 affects the equitable distribution of the marital estate. We agree with Bobby that interest began accruing when the court established an ascertainable amount owed to Jenny in its order pursuant to remand. *In re Marriage of Gerhart*, 245 Mont. 279, 284, 800 P.2d 698, 701 (1990). The District Court shall enter judgment for $117,633 to be paid to Jenny immediately, together with interest from July 14, 2010, at 10% per annum.

## CONCLUSION

¶29 We affirm the District Court's conclusion that our opinion in *Williams I* did not order a new trial and entitle Jenny to a substitution of judges. We reverse the court's reinstatement of the $1,000 child support obligation and remand for recalculation of Bobby's child support obligation. We strike the court's alternative arrangement for payment of Jenny's property interest in B&J and direct the court to enter judgment as set forth in ¶ 28.

/S/ BRIAN MORRIS

12

We Concur:


/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ BETH BAKER
/S/ MICHAEL E WHEAT